LA COMISIÓN DE SERVICIO PÚBLICO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JESÚS A. GONZÁLEZ, JUEZ, demandados; y STAR TAXICAPS, INC., et al., interventores.

Número 2169

*Sometido:* 12 de abril de 1955. *Resuelto:* 6 de mayo de 1955.

*Hon. Secretario de Justicia José Trías Monge, Edgar S. Belaval, Procurador Auxiliar y M. B. Carrasquillo, Ernesto C. Blanco, Nellie Ortiz Torres y Roberto Rivera Escalera,* abogados de la peticionaria; *Juan A. Faría y Rafael Martínez Álvarez,* abogados de los interventores.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Con fecha 15 de febrero de 1955 la Comisión de Servicio Público dictó una resolución fijando tarifas provisionales a ser puestas en vigor por todos los taxímetros en Puerto Rico.

Según el texto de dicha resolución, el servicio de taxímetros en Puerto Rico y especialmente en el área metropolitana se prestó hasta el año 1947, bajo el sistema de tarifas

por zonas, aprobadas por la Comisión de Servicio Público en 11 de septiembre de 1942. En marzo 18 de 1947 las empresas Arrow Taxi Cabs, Inc., De Diego Taxi Cabs, Inc., City Taxi Cabs, Inc., Star Taxi Cabs, Inc. y Majestic Taxi Cabs, radicaron una moción solicitando de la Comisión que fijara las siguientes tarifas:

> 35 centavos por el primer cuarto de milla.
> 5 centavos por cada cuarto de milla adicional.
> $2 por cada hora de espera.

Dos días después, el 20 de marzo de 1947, las mismas empresas radicaron otra moción solicitando que las tarifas propuestas por ellas se aprobaran como tarifas provisionales hasta tanto se pudiesen fijar tarifas permanentes. Accedió a ello la Comisión y en 27 de marzo de 1947 dictó una orden aprobando como provisionales las tarifas propuestas. Desde entonces y por espacio de ocho años dichas tarifas continuaron en vigor. Con el propósito de revisar estas tarifas provisionales y fijar tarifas permanentes, el 27 de noviembre de 1951 la Comisión expidió orden citando para audiencias. A pesar de que estas audiencias se celebraron y de que la Comisión recibió evidencia sometida por las empresas de taxímetros y por su propia División Legal, la Comisión no pudo llegar a conclusiones que le permitieran revisar las tarifas provisionales y fijar tarifas permanentes, por lo que en 24 de febrero de 1953, dictó una orden descontinuando, dando por terminados y archivando los procedimientos iniciados por su orden de 27 de noviembre de 1951. El mismo día 24 de febrero de 1953 la Comisión dictó otra orden señalando el 17 de marzo de 1953 para la iniciación de un nuevo procedimiento con el propósito de revisar las tarifas provisionales vigentes y fijar tarifas permanentes. Esta orden fué notificada a las empresas de taxímetros pero la audiencia nunca fué celebrada. En marzo 18 de 1953 la Majestic Taxi Cabs, De Diego Taxi Cabs, Inc., Sky View Taxi Cabs, Inc., Taxis Arrow, Inc., Star Taxi Cabs, Inc., y Metro Taxi Cabs, Inc.,

radicaron ante la Comisión una moción solicitando aumento en las tarifas provisionales en vigor y fijación de tarifas permanentes. Esta moción no fué considerada por la Comisión. En 14 de diciembre de 1954, la Comisión, integrada por los nuevos miembros que son los actuales incumbentes, emitió una orden citando a todas las Empresas de Taxímetros y al público para el 13 de enero de 1955 para el inicio de procedimientos con el propósito de revisar las tarifas provisionales y fijar tarifas permanentes. Durante cinco días alternados se celebraron audiencias públicas presentándose y admitiéndose por la Comisión evidencia testifical y documental.

Como resultado de estas audiencias, la Comisión dictó la Resolución de 15 de febrero de 1955, a que hicimos referencia al comienzo de esta opinión, fijando a los taxímetros las siguientes tarifas provisionales:

"*a*) Cargo inicial — 20¢, y 5¢ por cada cuarto de milla adicional recorrida, ...

"*b*) Tiempo de espera — $2.00 por cada hora de espera, ...

"*c*) Alquiler por hora — $3.00 por hora o fracción de una hora." (¹)

De esta resolución apelaron en tiempo para ante la Sala de San Juan del Tribunal Superior, las empresas Star Taxi Cabs, Inc., Taxis Arrow, Inc., Majestic Transportation Co., Inc., y de Diego Taxi Cabs, Inc. Al ser notificada de esta apelación, la Comisión radicó ante dicho tribunal una moción solicitando la desestimación de la apelación interpuesta.

---

(¹) El apartado (1) de la parte dispositiva de la Resolución, dispone:

"A estos efectos, la Comisión de Servicio Público de Puerto Rico resuelve y ordena:

"1.—*Tarifas*—Por los fundamentos anteriormente expuestos, las tarifas que se fijan en esta Orden se consideran para todos los efectos de ley de carácter provisional. Al momento de entrar en vigor esta Orden, las tarifas que cobrarán los taxis en Puerto Rico serán las siguientes:

"*a*) Cargo inicial — 20¢, y 5¢ por cada cuarto de milla adicional recorrida, DISPONIÉNDOSE, que los oficiales correspondientes de esta Comisión ajustarán los metros de los taxis a los fines de conformarlos a las disposiciones de la tarifa aquí establecida.

"*b*) Tiempo de espera — $2.00 por cada hora de espera, entendiéndose que el cargo por este concepto se cobrará únicamente cuando el taxi es

Como fundamento para la desestimación adujo que la corte carecía de jurisdicción porque la apelación era prematura, toda vez que en 25 de febrero de 1955 un sinnúmero de porteadores públicos autorizados para operar en el servicio de taxímetros, entre los cuales no figuran las apelantes, radicó ante la Comisión una moción de reconsideración de la resolución apelada, la cual está pendiente de resolución y por lo que la predicha resolución está sujeta a ser modificada, enmendada, rescindida o confirmada por la Comisión.

Antes de que la Comisión archivara su contestación y certificara los autos del procedimiento a la corte, ésta, a solicitud de las apelantes, señaló una vista para oír a las partes sobre (1) falta de jurisdicción de la Comisión para fijar las tarifas provisionales a que se refiere la resolución apelada, y (2) nulidad de la referida resolución u orden. Dicha vista se celebró el día 18 de marzo de 1955. Ambas partes comparecieron y discutieron la moción de desestimación presentada por la Comisión y las cuestiones de derecho planteadas por las apelantes.

Cinco días después, el 23 de marzo, la corte dictó un decreto con los siguientes pronunciamientos: (1) declarando sin lugar la moción para desestimar presentada por la Comisión, y (2) decretando la nulidad de la orden de la Comisión de Servicio Público de 15 de febrero de 1955 fijando tarifas provisionales para las empresas de taxímetros porque (a) la Comisión de Servicio Público carece de jurisdicción para dictar una orden fijando tarifas provisionales cuando no

---

detenido o se le ordena esperar por el propio pasajero. No se considera tiempo de espera el tiempo que se detenga el taxi en las luces de tránsito, ni por obstáculos del tránsito, u otras causas ajenas a la voluntad del pasajero.

"c) Alquiler por hora — $3.00 por hora o fracción de una hora.
"d) Se autorizan los siguientes cargos por equipaje:
　　　"a) 10 centavos por cada maleta en exceso de dos.
　　　"b) 25 centavos por cada baúl, Disponiéndose que no podrá cobrarse por bultos, bolsas de mano o por otras unidades de equipaje similares."

hay pendiente ante ella procedimiento alguno para fijar tarifas permanentes, y (*b*) porque la Comisión "no ha hecho las determinaciones que establece el artículo 24 (*a*) [de la Ley de Servicio Público] al fijar las tarifas provisionales. . ." sino que por el contrario la Comisión fijó dichas tarifas provisionales tomando como base consideraciones ajenas a las que expresamente menciona el artículo 24 (*a*).

Con el fin de revisar estos procedimientos expedimos un auto de *certiorari* y ordenamos a las partes que discutieran en sus alegatos los méritos de la sentencia recurrida así como las cuestiones de jurisdicción y procedimientos.(²)

■ De acuerdo con la anterior relación de hechos, son dos las cuestiones fundamentales envueltas en este recurso. La primera es si el tribunal recurrido tenía facultad para conocer de la apelación interpuesta, estando pendiente ante la Comisión una moción de reconsideración de la orden apelada, y la segunda es si dicho tribunal tenía autoridad para resolver la apelación en sus méritos sin tener ante sí el récord certificado de los procedimientos habidos ante la Comisión.

Examinemos la primera de estas cuestiones.

El art. 78 de la Ley de Servicio Público, en lo pertinente, dispone:

"Dentro de los treinta días después de archivada cualquier declaración o decisión por la Comisión o después de la fecha de haber sido notificada cualquier orden, *a menos que estuviere pendiente una solicitud de nueva audiencia,* y entonces dentro de los treinta días de haber sido denegada tal solicitud o de ha-

---

(²) Los autos elevados a este Tribunal constan únicamente de los siguientes documentos:

(1) Petición de apelación, acompañada de una copia de la Resolución apelada y de una declaración jurada del abogado de los apelantes;

(2) Moción de señalamiento de las cuestiones de derecho, presentada por los apelantes; (3) Resolución de la Corte haciendo el señalamiento solicitado; (4) Moción de Desestimación presentada por la Comisión de Servicio Público, acompañada de una copia de la Moción de Reconsideración presentada ante la Comisión por un sinnúmero de porteadores públicos; (5) Decreto de la Corte revocando la Orden de la Comisión y (6) Notificación de dicho Decreto.

berse dictado una orden modificando, enmendando, rescindiendo o confirmando la declaración, decisión u orden original, cualquiera de las partes en el procedimiento afectada por ella, podrá apelar para ante la sala de San Juan, del Tribunal Superior." (Bastardillas nuestras.)

El art. 75 de la Ley faculta a la Comisión para conceder y celebrar una nueva audiencia si se demostrare causa suficiente para ello, en lo que respecta a cualquier asunto determinado por ella mediante audiencia, o investigación y orden dictadas en dicho asunto. Las partes deben hacer su solicitud de nueva audiencia dentro de los 15 días después de la notificación de la orden, y en ella harán constar específicamente las razones en que la fundan.

El tribunal recurrido declaró sin lugar la moción de desestimación presentada por la Comisión fundándose únicamente en que ante la Comisión no estaba pendiente una solicitud de "nueva audiencia", porque como en la titulada "Moción de Reconsideración" no se solicitaba la celebración de una nueva audiencia, la misma no interrumpía el término para apelar.

Es innecesario detenernos a considerar el significado legal de los términos "reconsideración" y "nueva audiencia". El nombre no hace la cosa. Un estudio cuidadoso de la aludida "Moción de Reconsideración" nos convence de que ella cumple con los requisitos de una solicitud de "nueva audiencia", bajo el art. 75 de la Ley de Servicio Público. Los allí peticionarios suplican de la Comisión que ésta anule y deje sin efecto su resolución de 15 de febrero de 1955 fijando tarifas provisionales. La petición o "moción de reconsideración" contiene una exposición detallada de las razones específicas en que la misma se funda. Además solicitan de la Comisión que ordene la celebración de una vista sobre dicha moción. Esto es suficiente, y no podemos por tanto convenir con el tribunal recurrido en que ante la Comisión no había pendiente una petición de nueva audiencia.

Sin embargo, la solicitud de nueva audiencia presentada por otros porteadores públicos afectados por la Resolución de la Comisión, no interrumpió el término de 30 días que tenían las empresas de taxímetros relacionadas anteriormente para apelar de dicha resolución. Veamos.

Las tarifas provisionales en este caso fueron fijadas por la Comisión en el ejercicio de la facultad que le confiere el art. 24(a) de la Ley de Servicio Público.([3]) Después de concederle autoridad a la Comisión para que previa notificación y audiencia pueda fijar, determinar y prescribir tarifas provisionales en cualquier procedimiento incoado para determinar la razonabilidad de las tarifas de cualquier empresa de servicio público, dicho precepto legal dispone que "Las tarifas provisionales así determinadas y prescritas se basarán en la necesidad de proveer un rédito no menor de un cinco (5) por ciento del costo original, menos depreciación acaecida, de las propiedades físicas utilizadas en el servicio de la compañía de servicio público implicada en el caso." Esto significa que al fijar la tarifa provisional la Comisión debe tratar a cada empresa de taxímetros o personas naturales autorizadas para operar el negocio de taxímetros como un caso individual, tomando como base el costo original, menos depreciación acaecida, de las propiedades físicas utiliza-

---

([3]) El art. 24(a), en lo pertinente, dispone:

"En cualquier procedimiento incoado para determinar la razonabilidad de las tarifas de cualquier empresa de servicio público la Comisión podrá, previa notificación y audiencia, en los casos en que, en su opinión, fuere requerido en provecho público, fijar, determinar y prescribir tarifas provisionales que serán puestas en vigor por la compañía de servicio público que estuviere implicada, durante el tiempo que se requiriese para la determinación de las tarifas que deben en definitiva regir.

"Las tarifas provisionales así determinadas y prescritas se basarán en la necesidad de proveer un rédito no menor de un cinco (5) por ciento del costo original, menos depreciación acaecida, de las propiedades físicas utilizadas en el servicio de la compañía de servicio público implicada en el caso. Si los informes debidamente certificados por dicha compañía no contuvieran el costo original menos depreciación de las referidas propiedades, la Comisión podrá estimar dicho costo y depreciación y fijar, determinar y prescribir las tarifas en la forma en que aquí se dispone."

das por cada una de ellas en el servicio. [4]　El mismo art. 24 (*a*) dispone que la Comisión puede determinar este costo original depreciado de los informes certificados por las compañías, y si éstos no contuvieren tal costo original depreciado entonces la Comisión puede hacer un estimado del mismo. Esto nos obliga a referirnos nuevamente a la "Moción de Reconsideración" presentada ante la Comisión por otros operadores de taxímetros.　Éstos alegan en dicha moción que la Comisión no tuvo ante sí prueba alguna sobre el costo original de sus propiedades ni sobre la depreciación de las mismas; que ellos presentaron prueba sobre su situación económica y sobre los ingresos y gastos de funcionamiento de sus respectivas empresas de servicio público y que de acuerdo con dicha prueba no se justifica una rebaja en las tarifas, siendo por tanto, confiscatorias las decretadas por la Comisión.　Otras alegaciones de dicha moción, se refieren igualmente al caso individual de cada uno de ellos.

Al disponer de esa moción la Comisión puede muy bien resolver que las tarifas provisionales proveen un rédito no menor de un 5% del costo original, menos depreciación acaecida de las propiedades físicas utilizadas por los allí promoventes en el servicio de sus empresas de taxímetros, si la prueba justifica tal conclusión, o por el contrario puede resolver que dichas tarifas provisionales no proveen el rédito mínimo exigido por el estatuto.　En uno u otro caso, el factor básico que la Comisión deberá tener en cuenta, es el costo original menos depreciación acaecida.　Ese factor no es uno común a todas las empresas y personas autorizadas para operar el negocio de taxímetros en Puerto Rico.　Por lo tanto, la determinación de la Comisión al efecto de que tomando en consideración este factor básico, respecto a los promoventes en el incidente de reconsideración, las tarifas pro-

---

[4] Aun en la fijación de tarifas permanentes cada empresa de servicio público debe ser tratada como un "problema individual".　Véase el escolio 6 de la opinión en el caso de *Cía Azucarera Toa* v. *Com. Serv. Público*, 71 D.P.R. 212.

visionales proveen o no a ellos el rédito mínimo estatutario, en nada afecta a las empresas apelantes, cuyo problema individual en tanto en cuanto se refiere por lo menos, al costo original menos depreciación acaecida de sus propiedades, es con toda probabilidad distinto. En su consecuencia, la solicitud de reconsideración o nueva audiencia, no impedía a las entidades o personas que no eran parte en dicha solicitud de reconsideración apelar de la resolución de la Comisión.(5)

Resuelto ya que la apelación de la Resolución de la Comisión fijando tarifas provisionales no era prematura, pasaremos a considerar la segunda cuestión envuelta en este recurso, o sea, si dicha corte estaba autorizada para resolver, en el estado en que se encontraban los procedimientos ante ella, los méritos de la apelación, y en su consecuencia, anular la resolución apelada.

Hemos dicho antes que la corte anuló la resolución apelada (1) porque la Comisión carecía de jurisdicción para fijar tarifas provisionales cuando no se había iniciado ni estaba pendiente ante ella un procedimiento para fijar tarifas permanentes y (2) porque al fijar las tarifas provisionales la Comisión no hizo las determinaciones que establece el art. 24(a).

En cuanto al primer punto, la corte se fundó en el caso de *Cía. Azucarera Toa* v. *Comisión*, 71 D.P.R. 212, donde resolvimos que la Legislatura ha dispuesto en el art. 24(a) que una tarifa provisional será fijada para empresas clásicas de servicio público [y para compañías azucareras] solamente mientras esté pendiente un procedimiento sobre tarifa permanente. Concluyó el tribunal recurrido que de la faz de la resolución apelada "se desprende que la Comisión de Servicio

---

(5) El problema y quizás su solución serían distintos, si la Comisión, mediante orden al efecto, hubiera resuelto conceder una nueva audiencia a todas las empresas afectadas, a los fines de determinar si reconsideraba o no la Resolución fijando tarifas provisionales, o si al dar curso a la moción de reconsideración presentádale, hubiera suspendido los efectos de su Resolución en cuanto a todos los afectados por ella, hasta tanto resolviera la reconsideración.

Público ha fijado tarifas provisionales a las empresas de taxímetros sin que esté pendiente ante la Comisión de Servicio Público procedimiento alguno para fijar tarifas permanentes, ya que de la faz de la misma resolución se desprende que la Comisión de Servicio Público ha fijado tarifas provisionales con miras a facilitar el mejor estudio del negocio y fijar en su día tarifas permanentes".

El tribunal recurrido no tiene facultad para resolver tan importante cuestión, basándose exclusivamente en la resolución apelada. Su decisión descansa en inferencias e interpretación del lenguaje de la resolución que bien pueden ser incorrectas. Por ejemplo, podría inferirse en contrario, que ante la Comisión hay pendiente un procedimiento para fijar tarifas permanentes, del siguiente párrafo de la resolución.

"El día 14 de diciembre de 1954 la Comisión de Servicio Público, por voz de sus nuevos miembros, emitió una orden citando a todas las Empresas de Taxis y al público para el 13 de enero de 1955 a las 2:00 de la tarde *para el inicio de procedimiento* con el propósito de revisar las tarifas provisionales *y aprobar tarifas permanentes* para regir los servicios de taxis en Puerto Rico." (Bastardillas nuestras.)

No estamos resolviendo que con la orden de 14 de diciembre de 1954 se inició el procedimiento para fijar las tarifas permanentes. Bien podría ser así, si el récord de los procedimientos habidos ante la Comisión no demostrara lo contrario. Hay una marcada distinción entre los hechos de este caso y los de la *Compañía Azucarera del Toa*. En este último caso la propia Comisión admitió que no se había iniciado procedimiento alguno para fijar tarifas permanentes. En verdad al señalar las vistas para las tarifas provisionales, en aquel caso, las órdenes de la Comisión decían que se habían iniciado "estudios relacionados con la valoración de las propiedades" de las compañías allí envueltas. Dijimos entonces que la mera celebración de una investigación *ex parte*, refiriéndonos al inicio de "estudios relacionados con la valoración de las propiedades", no constituía la radicación de un procedimiento. Sin

embargo, en el presente caso, a juzgar por lo que aparece de la resolución apelada, se dictó una orden por la Comisión citando para una vista a las Empresas de Taxímetros y al público con el doble propósito de (1) revisar las tarifas provisionales y (2) aprobar tarifas permanentes. Las vistas se celebraron y la Comisión recibió prueba documental y testifical. El hecho de que la Comisión hiciera constar en su resolución que necesita hacer un estudio más específico y con datos más concretos en relación con la operación de las empresas de taxímetros y de los otros porteadores individuales o asociaciones dedicadas al mismo negocio para poder llegar a una conclusión definitiva y que por tal motivo no fijaba tarifas permanentes en esos momentos, no implica que el procedimiento iniciado, de haberlo, para fijar tarifas permanentes, haya concluído y por tanto, no esté pendiente ante la Comisión. Según hemos dicho ya, no estamos resolviendo que ante la Comisión hay pendiente un procedimiento para la fijación de tarifas permanentes. Solamente hemos querido indicar que tal cosa puede inferirse del contexto de la resolución apelada. Sin embargo, esta cuestión deberá ser resuelta en su oportunidad por la corte recurrida a base de lo que aparezca de los autos que le certifique la Comisión.

■■■■■ Pasemos al segundo punto. Al resolver que la Orden de la Comisión fijando las tarifas provisionales, viola las disposiciones del art. 24 (*a*), obviamente la corte recurrida entró a considerar los méritos de la apelación interpuesta por las empresas de taxímetros, sin tener ante sí, según ya hemos dicho, los autos certificados por la Comisión.

Es incuestionable que al fijar tarifas provisionales la Comisión de Servicio Público viene obligado a seguir la norma establecida en el art. 24 (*a*). Las tarifas provisionales deberán basarse en la necesidad de proveer un rédito no menor de un cinco (5) por ciento del costo original, menos depreciación acaecida, de las propiedades físicas utilizadas en el servicio de la compañía de servicio público implicada en el caso. Si

dichas tarifas no proveen ese rédito mínimo, serán nulas. (⁶)
¿Cómo sabemos si las tarifas provisionales fijadas por la
Comisión para las empresas apelantes, no proveen el rédito
mínimo estatutario? Entre las conclusiones de hecho de la
Comisión figura la siguiente:

"En el caso ante nosotros, no existe evidencia ni indicio al-
guno de evidencia, de que las empresas o porteadores individua-
les autorizados al negocio de taxis operen, como resultado de las
tarifas provisionales vigentes, con pérdida alguna de capital;
por el contrario la evidencia es al efecto de *que el margen de be-
neficio para unas es extraordinariamente alto y para otras más
alto que el límite razonable que debe permitirse a una empresa de
servicio público por ley.*" (Bastardillas nuestras.)
Aunque ésta es una conclusión de carácter general y no se
refiere específicamente a las apelantes tampoco las excluye,

---

(⁶) La Comisión viene obligada a tratar a cada empresa de taxímetro,
persona o entidad autorizada a operar dicho negocio, como un "problema
individual". *Cía Azucarera Toa* v. *Comisión*, supra. Sería indeseable e
inadecuado que se fijaran tarifas para los taxímetros que no fueran uni-
formes, tanto por la forma como dichas tarifas afectarían al público,
como por las consecuencias económicas que sufrirían algunas compañías
de servicio público dedicadas a ese negocio. En verdad, teniendo la Co-
misión que tratar a cada compañía de servicio público como un "problema
individual", la labor de fijar tarifas uniformes a todos, es bastante difícil
aunque no imposible. La Comisión reconoce esta dificultad al expresarse
así:

"Las conclusiones y hechos anteriormente expresados nos demuestran
que no es posible fijar bases tarifarias a negocios disímiles que sin em-
bargo prestan un servicio idéntico. Fijar, por ejemplo un rédito de diez
por ciento para un operador de un vehículo cuyo valor es de $2,000 sería
inadecuado cuando ese mismo rédito para una empresa con facilidades
de operación valoradas en miles de dólares, puede resultar justo y razo-
nable. Dentro de estas condiciones no podemos ajustarnos a fórmulas
inflexibles para computar una tarifa. Tenemos que fundarnos principal-
mente en hechos económicos y hacer un estudio comprensivo del negocio de
taxis."

Reconocemos que los métodos dispuestos por nuestra ley para la fija-
ción tanto de tarifas provisionales como de tarifas permanentes no son
realmente adecuados en campos como el de la explotación de taxímetros
donde se usa una cantidad de propiedad relativamente pequeña, donde no
existe monopolio y donde se desea que haya uniformidad de tarifas. Sin
embargo, mientras la Asamblea Legislativa no reexamine y modifique esos
métodos la Comisión de Servicio Público no puede hacer otra cosa que
seguirlos.

por lo que, si del récord surgiera que las tarifas impugnadas conceden a las apelantes un rédito no menor de un 5% del costo original de sus propiedades, menos depreciación acaecida, no tendrían ellas motivo legal para impugnarlas. [7] De todos modos el tribunal recurrido no estaba facultado para resolver sobre la validez de la resolución apelada sin tener ante sí los autos certificados por la Comisión.   No es ésta la primera vez que consideramos el alcance de la revisión judicial provista en la Ley de Servicio Público.   De acuerdo con el art. 79 de dicha Ley, la Comisión, dentro de los treinta días de haber sido notificada de la apelación, "certificará los autos del antedicho procedimiento a la corte correspondiente...". Los autos incluirán "las declaraciones tomadas, las conclusiones de hechos de la Comisión basadas sobre dichas declaraciones, si hubiere tales conclusiones, copia de todas las órdenes dictadas por la Comisión en dicho procedimiento, y una copia de la opinión, si la hubiere, archivada por la Comisión". [8] El art. 82 dispone que la Comisión archivará una contestación dentro de los treinta días después de notificada de la interposición del escrito de apelación y que a la presentación de dicha contestación "se considerará entablada la controversia en el caso y se celebrará una vista ante dicha corte," y el art. 83 dispone que en dicha apelación "la corte determinará, *en vista de los autos* que le han sido certificados por la Comisión, *si la orden apelada es o no razonable y de acuerdo con la ley*." (Bastardillas nuestras.)

[7] Convenimos en que en los casos de esta naturaleza la Comisión debe formular conclusiones específicas en cuanto al valor original depreciado de las propiedades físicas utilizadas por cada una de las empresas en el servicio público.   En esta forma el tribunal de apelación está en mejores condiciones de resolver si la orden apelada "es o no razonable y de acuerdo con la Ley".   En vista del alcance de la revisión judicial provista por la Ley de Servicio Público, nos inclinamos a creer que una orden de la Comisión de Servicio Público no es nula porque de ella no aparezcan las indicadas conclusiones de hecho, especialmente cuando la ley no impone expresamente tal obligación.

[8] El propósito del estatuto al ordenar que se eleve el récord al tribunal de apelación, es proporcionar a éste la oportunidad de determinar si en la prueba hay una base razonable para la decisión de la Comisión. *Schuylkill Ry. Co.* v. *Public Service Commission,* 112 Atl. 5.

De acuerdo con los anteriores preceptos, esta apelación se basa exclusivamente en el récord ante la Comisión y la función del tribunal se concreta a determinar "en vista de los autos" si la orden apelada "es o no razonable y de acuerdo con la ley". *Godreau & Co.* v. *Com. Servicio Público*, 71 D.P.R. 649 y casos citados a la página 655. La corte viene, por tanto, obligada a pasar sobre el récord certificádole por la Comisión antes de resolver si la orden apelada es o no razonable y de acuerdo con la ley. *St. Clair Borough* v. *Tamaqua & Pottsville E. Ry. Co.*, 103 Atl. 287.

La sentencia dictada por la corte recurrida no está basada en los autos que han de serle certificados por la Comisión. En consecuencia dicha corte no estaba en condiciones de determinar, como no lo estamos nosotros tampoco, si la orden apelada es o no razonable y de acuerdo con la ley.

*Por las razones expuestas se anula la sentencia dictada en 23 de marzo de 1955 por el tribunal recurrido, y se continuarán ante dicho tribunal los procedimientos no incompatibles con esta opinión.*

---

Opinión concurrente y disidente en parte, del Juez Asociado Sr. Negrón Fernández.

Estoy de acuerdo con aquella parte de la opinión del Tribunal que establece la necesidad de que los autos de todo el procedimiento ante la Comisión de Servicio Público, certificado por ésta, sean examinados por el Tribunal Superior al conocer de una apelación como la presente, viniendo obligado dicho tribunal a descansar exclusivamente en dichos autos al decidir si la orden apelada es o no razonable y si está de acuerdo con la ley. En consecuencia, estoy de acuerdo con la conclusión de que la sentencia aquí impugnada resulta nula, ya que el tribunal recurrido pasó sobre los méritos de dicha apelación sin tener ante sí los autos del procedimiento ante la Comisión. Sin embargo, mi criterio es que dicho tribunal no

tenía jurisdicción para conocer de la apelación interpuesta, y que, por este motivo previo, la sentencia es nula. La solicitud de nueva audiencia presentada por varios porteadores públicos afectados por la resolución de la Comisión interrumpió, a mi juicio, el término de 30 días que las empresas de taxímetros, aquí interventoras, tenían para apelar de la misma. Independientemente de la forma en que las normas estatutarias deban ser aplicadas por la Comisión al fijar tarifas a los taxímetros, el interés público que circunda dicha actuación—por razón de la clase de servicio público que se reglamenta—y la necesidad de que las tarifas que viene el público obligado a pagar por el servicio de taxímetros, sean uniformes, art. 23 de la Ley de Servicio Público, según quedó enmendado por la Ley núm. 440 de 15 de mayo de 1951 (pág. 1275), me lleva a la conclusión de que cuando la Comisión de Servicio Público concede una nueva audiencia—aun cuando sea a solicitud de una sola de las partes en el procedimiento—. dicha concesión de nueva audiencia interrumpe imperativamente el término apelativo no sólo de la parte que la solicitó, si que también de cualesquiera otras de las partes en el procedimiento, si éstas resultan afectadas por dicha orden, artículo 78 de la Ley.

En la nueva audiencia, desde luego, la Comisión viene obligada a examinar el problema de las tarifas no sólo en cuanto éstas afectan a la parte que solicitó la audiencia, si que también en cuanto a todas las demás que, habiendo sido parte en el procedimiento ante ella, quedaron afectadas por la orden; haciendo su nueva determinación de conformidad con los requisitos estatutarios y dando consideración a todos los factores que propiamente deban ser examinados para fijar las tarifas. Art. 23 y 24 (a) de la Ley, este último adicionado por la Ley núm. 12 de 9 de abril de 1941 ( (1) pág. 343).

Estoy de acuerdo, por lo tanto, con que la sentencia del tribunal recurrido es nula, pero por falta de jurisdicción, aunque concurren las otras causas en que basa su motivo de nulidad la opinión del tribunal; y en esas circunstancias no

queda, a mi juicio, procedimiento ulterior alguno en el tribunal recurrido, que no sea el de devolver el caso a la Comisión para aquellos procedimientos que, de acuerdo con la ley, deban ante ella seguirse.

---

Opinión disidente del Juez Asociado Sr. Belaval.

Entiendo que la Sala de San Juan del Tribunal Superior no debe seguir interviniendo en este caso, después que la Comisión de Servicio Público ha decidido revisar las tarifas propuestas. Como cuestión de realidad, la Comisión de Servicio Público no actúa en este asunto como un organismo ministerial, o como un organismo cuasijudicial, sino como un organismo cuasilegislativo: *Molini* v. *Sociedad Mario Mercado e Hijos*, 73 D.P.R. 937, (*Snyder*), (1952), cita precisa a la pág. 944. En cualquier momento tiene derecho a "alterar, enmendar, modificar o derogar cualesquiera precios, pasajes o cargos vigentes en la actualidad que no fueren justos, debidos, *iguales* y razonables", (art. 23 de la Ley de Servicio Público) según enmendado por la Ley núm. 442 de mayo 14 de 1947 ((1) pág. 923) y por la Ley núm. 440 de 15 de mayo de 1951. No me parece la mejor actitud judicial considerar cualquiera decisión de la Comisión de Servicio Público tan final e inalterable que no pueda ser alterada, enmendada, modificada o derogada en cualquier momento por la Comisión. La analogía que se me ocurre es la de una Legislatura que tuviera que esperar a que los tribunales declararan inconstitucional una ley para poder enmendarla.

Tengo muy serias dudas que para decretar una tarifa provisional, de acuerdo con el art. 24(*a*), adicionado a la Ley de Servicio Público de Puerto Rico, por la Ley núm. 12 de 9 de abril de 1941, la Comisión de Servicio Público esté obligada a determinar un rédito no menor de un cinco por ciento del costo original *menos* depreciación, considerando a cada empresa de taxímetro, persona o entidad autorizada a operar dicho negocio como un problema individual. Nada hemos encontrado en la Ley de Servicio Público de Puerto Rico que nos

autorice a individualizar cada caso para una determinación distinta. Si esto fuera así no podría nunca establecerse una tarifa uniforme para una misma clase de negocio en una zona específica y tendría que hacerse una tarifa provisional uniforme para cada porteador público. El caso de los porteadores públicos tal vez pueda ser distinto al caso de las compañías azucareras: *Cía Azucarera del Toa* v. *Comisión*, 71 D.P.R. 212, (*Snyder*), (1950), cita precisa a la pág. 221. En cuanto al problema constitucional escueto, nos reservamos pasar juicio sobre él en el momento oportuno.

No vemos la necesidad de prolongar indebidamente la acción cuasilegislativa de la Comisión de Servicio Público en el presente caso. Si la Comisión se equivocó al no considerar a su debido tiempo el rédito no menor de un cinco (5) por ciento del costo original menos la depreciación causada por el uso de la propiedad o el transcurso del tiempo, pues mientras más rápidamente se corrija dicho error, mejor para todas las partes envueltas. Parece que el perjuicio que puedan haber sufrido las interventoras está más que compensado por la ganancia anterior que percibieron mientras la Comisión no hizo nada para fijar nuevas tarifas. No debemos antagonizar más de lo necesario, por el simple deleite de descubrir un error, a un organismo que trata de cumplir con su deber.