EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sammy Báez Figueroa<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección<br><br>Recurrido | Certiorari<br><br>2022 TSPR 51<br><br>209 DPR ____ |

Número del Caso: CC-2020-0354

Fecha: 22 de abril de 2022

Tribunal de Apelaciones:

    Panel III

Abogado de la parte peticionaria:

    Lcdo. Julio E. Gil De Lamadrid

Oficina del Procurador General:

    Lcdo. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Javier O. Sepúlveda Rodríguez
    Subprocurador General

    Lcda. Lisa Mónica Durán Ortiz
    Procuradora General Auxiliar

Materia: Procedimiento Criminal – Una segunda moción de reconsideración no interrumpe el término para acudir en revisión cuando está basada en los mismos fundamentos de una primera moción y la determinación sobre esta no altera sustancialmente la decisión original.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sammy Báez Figueroa<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección<br><br>Recurrido | CC-2020-0354 | *Certiorari* |

El Juez Asociado señor RIVERA GARCÍA emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 22 de abril de 2022.

El presente caso nos brinda la oportunidad de detallar el alcance y los contornos del mecanismo post sentencia de reconsideración dispuesto en nuestro ordenamiento procesal criminal. Específicamente, debemos atender si una segunda moción de reconsideración sobre un mismo dictamen ⸺y que se cimienta en los mismos fundamentos expresados en una primera moción de reconsideración⸺ tiene el efecto de interrumpir el término para acudir en revisión judicial ante el Tribunal de Apelaciones.

Por los fundamentos que expresaremos a continuación, resolvemos que, en virtud de las Reglas de Procedimiento Criminal, *infra*, una segunda moción de reconsideración no tiene efecto interruptor sobre el término para acudir al Tribunal de Apelaciones en revisión de una *Sentencia* o *Resolución*. Ello es así, siempre que la determinación de la primera reconsideración no altere sustancialmente la

determinación original del foro de instancia. Así, pautamos la improcedencia de este segundo mecanismo y equiparamos en condiciones el cuerpo procesal criminal a su homónimo civil.

# I

Por hechos ocurridos el 5 de mayo de 2009 en el Municipio de Toa Baja, en lo que posteriormente se denominó como la "*Masacre de Pájaros*", el Ministerio Público presentó múltiples cargos criminales contra el Sr. Sammy Báez Figueroa (señor Báez Figueroa o peticionario).

Luego de los trámites procesales de rigor, el juicio fue celebrado ante Jurado. Una vez culminó el proceso en su fondo, el Jurado rindió un veredicto de culpabilidad, por mayoría de votos, respecto a los cargos imputados por el Artículo 249 del Código Penal de Puerto Rico de 2004[1] y por los cargos imputados bajo los Artículos 5.07, 5.15 y 6.01 de la Ley de Armas de Puerto Rico de 2000.[2]

Consecuentemente, el 15 de abril de 2011, el Tribunal de Primera Instancia emitió la correspondiente *Sentencia* y condenó al peticionario a cumplir una pena de reclusión de doscientos once **(211)** años.[3]

---

[1] 33 LPRA Sec. 4877, sobre Conspiración.
[2] 25 LPRA secs. 458f, 458n y 459, sobre Posesión o Uso Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado, Disparar o Apuntar Armas y Fabricación, Distribución, Posesión y Uso de Municiones, respectivamente.
[3] *Veredictos del Jurado*, *Minuta* y *Sentencias*, Apéndice de la Solicitud de Desestimación y Alegato de la Parte Recurrida, págs. 1-19.

Inconforme con el veredicto y la *Sentencia* dictada, el señor Báez Figueroa oportunamente apeló el fallo en su contra ante el Tribunal de Apelaciones. Luego de evaluar con detenimiento la prueba presentada, el foro intermedio confirmó en su totalidad el dictamen del tribunal inferior.[4] Insatisfecho, el peticionario recurrió ante este Tribunal mediante *Petición de Certiorari*. Sin embargo, determinamos no expedir el recurso de manera definitiva el 3 de junio de 2013.[5]

Posteriormente, el 13 de junio de 2016 el señor Báez Figueroa comenzó un trámite post sentencia en el que reclamó su excarcelación, así como un nuevo juicio, fundamentado en que las convicciones en nuestro sistema jurídico penal requerían la unanimidad del jurado para alcanzar veredictos de culpabilidad. El 2 de marzo de 2017, el foro de instancia denegó su solicitud.[6] No conteste con esta determinación, el peticionario acudió ante el Tribunal de Apelaciones, foro que, de igual forma, denegó su petición.[7] De manera similar resolvió esta Curia.

Así las cosas, el 21 de abril de 2020, el peticionario acudió nuevamente ante el Tribunal de Primer Instancia y presentó una *Petición de Habeas Corpus*.[8] En esencia, alegó

---

[4] *Pueblo v. Sammy Báez Figueroa,* KLAN201100658.
[5] *Resolución* CC-2013-0118 atendiendo una segunda solicitud de reconsideración ante este Tribunal.
[6] *Pueblo v. Sammy Báez Figueroa*, KLCE2017-00413.
[7] Íd.
[8] *Petición de Habeas Corpus,* Apéndice de la Petición de *certiorari*, págs. 1-3.

que su convicción fue ilegal, toda vez que los veredictos pluralistas dictados en su contra le violaron garantías constitucionales, de conformidad con lo resuelto en Ramos v. Louisiana, 590 US __ (2020), 140 S.Ct. 1390 (2020), sobre el requisito de alcanzar unanimidad de votos del Jurado para poder obtener un veredicto de culpabilidad válido.

El 23 de abril de 2020, el Tribunal de Primera Instancia desestimó su recurso sin perjuicio.[9] El foro primario razonó que de acuerdo con la Regla 45 del Reglamento del Tribunal Supremo de los Estados Unidos, la decisión de Ramos v. Louisiana, *supra*, aún no era final y firme.

Insatisfecho, el 27 de abril de 2020, el peticionario le solicitó al foro primario reconsideración de su determinación a través de una moción intitulada ***Moción de Reconsideración a Hábeas Corpus y/o Solicitud de Nuevo Juicio*** (primera reconsideración). En síntesis, arguyó que la decisión de Ramos v. Louisiana, *supra*, fue efectiva desde la fecha en que se publicó, por lo que le era aplicable lo allí dispuesto.[10] Además, recalcó que, de acuerdo con lo resuelto por el Tribunal Supremo federal en el caso antes mencionado, la Sexta Enmienda de la Constitución de Estados Unidos garantiza como derecho fundamental el requisito de alcanzar veredictos unánimes respecto a la culpabilidad del

---

[9] *Notificación de Orden del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, pág. 4.

[10] *Moción de Reconsideración a Hábeas Corpus y/o Solicitud de Nuevo Juicio*, Apéndice de la Petición de *certiorari*, págs. 5-11.

acusado. De esta forma, **expresamente suplicó** que "*luego de los trámites de rigor [emitiera] orden <u>reconsiderando</u> la desestimación sin perjuicio*" y que, consecuentemente, dejara sin efecto los veredictos en su contra, ordenara su excarcelación y la celebración de un nuevo juicio.[11]

Ante ello, el tribunal de instancia ordenó al Ministerio Público que presentara una expresión fundamentada con relación a la moción presentada por el peticionario.[12] Consiguientemente, en cumplimiento con lo ordenado, el Estado compareció mediante *Réplica a Mociones relacionadas a Habeas Corpus y Nuevo Juicio*, y alegó, que el Tribunal Supremo federal claramente estableció que no adjudicó el asunto de la retroactividad de su decisión y que lo allí resuelto estaba limitado a ser aplicado únicamente a casos nuevos y a casos cuyas sentencias no hubiesen advenido final y firme.[13] Además, indicó que el veredicto rendido contra el peticionario fue uno válido, pues así lo permitía el estado de derecho vigente al momento de ser juzgado. Finalmente, argumentó que el caso del señor Báez Figueroa era final y firme por lo que la retroactividad de la nueva norma constitucional no debía ser aplicada.

El 10 de junio de 2020, el foro de instancia notificó la denegatoria a la *Moción de Reconsideración a Hábeas*

---

[11] Íd.

[12] *Notificación de Orden del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, pág. 12.

[13] *Réplica a Mociones relacionadas a Habeas Corpus y Nuevo Juicio*, Apéndice de la Petición de *certiorari*, págs. 15-20.

*Corpus y/o Solicitud de Nuevo Juicio* que presentó el peticionario por considerar que en Ramos v. Louisiana, *supra*, no se hizo determinación alguna con relación a la aplicación retroactiva de la norma allí pautada a casos con sentencias finales y firmes, como lo era el caso de epígrafe.[14]

En completo desacuerdo con esta decisión, el 20 de junio de 2020, el peticionario presentó una **segunda moción de reconsideración**, esta vez intitulada *Solicitud de Reconsideración*, **amparado en los mismos argumentos que anteriormente había esbozado**, en esencia, de que lo resuelto en Ramos v. Louisiana, *supra*, debía ser aplicado retroactivamente de manera plena, toda vez que la Sexta Enmienda de la Constitución federal garantizaba el requisito de unanimidad de jurado como un derecho fundamental.[15] Eventualmente, el 18 de julio de 2020, el tribunal de instancia denegó esta solicitud.[16]

No conteste con ese proceder, el 27 de julio de 2020, el señor Báez Figueroa acudió nuevamente en revisión ante el Tribunal de Apelaciones mediante auto de *certiorari*, y adujo, que el foro primario incidió al "no resolver sobre

---

[14] *Orden del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, págs. 25-26.

[15] *Solicitud de Reconsideración*, Apéndice de la Petición de *certiorari*, págs. 27-34.

[16] *Notificación de Orden del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, pág. 35.

la retroactividad del derecho fundamental de ser hallado culpable por unanimidad y no por mayoría".[17]

Posteriormente, y sin requerir la comparecencia de la Oficina del Procurador General de Puerto Rico, el 20 de agosto de 2020, el Tribunal de Apelaciones denegó expedir el recurso de *certiorari*, al señalar que la Corte Suprema federal expresamente estableció que lo resuelto en Ramos v. Louisiana, *supra*, se extendía únicamente a los casos criminales que se encontraran activos o pendientes de adjudicación en etapas apelativas. Además, reiteró que, como norma general, la aplicación retroactiva de nuevas pautas constitucionales era de aplicación, únicamente, a casos cuya sentencia no fuese final y firme.[18]

Así, inconforme con esta determinación, el 18 de septiembre de 2020, el peticionario recurrió ante nos y le imputó al tribunal intermedio los errores siguientes:

> **Erró el TPI y el TA al no resolver la controversia sobre la retroactividad del derecho fundamental de ser hallado culpable por unanimidad y no por mayoría.**
>
> **Erró el TPI y el TA en no reconocer que el Peticionario lleva años solicitando que se revoque su sentencia condenatoria por no ser hallado culpable por unanimidad.**

En consideración de los errores planteados, el 4 de diciembre de 2020 emitimos una *Resolución* en la que determinamos expedir el auto solicitado. Consecuentemente,

---

[17] *Báez Figueroa v. Adm. de Corrección*, KLCE202000588.
[18] Íd.

el 19 de enero de 2021, el señor Báez Figueroa presentó el *Alegato de la Parte Peticionaria*. En síntesis, declaró que su sentencia era nula por ser contraria al derecho fundamental de ser condenado mediante un veredicto unánime. Por ello, reclamó que debía aplicársele retroactivamente el nuevo mandato constitucional.

Por su parte, el Estado compareció el 18 de febrero de 2021, a través de la Oficina del Procurador General de Puerto Rico mediante una *Solicitud de Desestimación y Alegato de la Parte recurrida*. En esta, sostuvo que el recurso presentado ante el tribunal apelativo y, por consiguiente, ante nosotros, es tardío, toda vez que el peticionario instó una segunda moción de reconsideración que no tuvo el efecto de interrumpir el término para revisar la denegatoria del foro primario. Sobre este particular, arguyó que el peticionario presentó una moción de reconsideración el 27 de abril de 2020, la cual fue denegada mediante notificación el 10 de junio de 2020, y no varió el dictamen original objeto de reconsideración, por lo que la segunda moción de reconsideración, bajo nuestro esquema procesal penal, es improcedente. Por consiguiente, **sostuvo que el deber del señor Báez Figueroa era acudir en revisión ante el foro intermedio y no presentar esta segunda moción de reconsideración.**

De manera alternativa, y en lo que respecta al asunto de la retroactividad, el Procurador General manifestó que,

tal como lo dispuso <u>Ramos v. Louisiana</u>, *supra*, el nuevo postulado constitucional aplicaba a casos que estaban pendientes o en apelación ordinaria, cuyas condenas no habían advenido finales y firmes. En virtud de ello, señaló que el caso contra el peticionario advino final y firme en el año 2013, por lo que no debía aplicársele retroactivamente la nueva norma constitucional.

De esta forma, contando con el beneficio de la comparecencia de ambas partes, procedemos esbozar el derecho aplicable a la controversia de autos.

## II

### A. Jurisdicción

Como sabemos, los foros judiciales de Puerto Rico son tribunales de jurisdicción general, que como tal, tienen autoridad para entender en cualquier causa de acción que presente una controversia propia para adjudicación.[19] Esto, en virtud de lo establecido en el Art. V, secc. 2 de nuestra Constitución, referente a que "[l]os tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración".[20] Por consiguiente, hemos definido la jurisdicción como "el poder o la autoridad que posee un

---

[19] *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101, (2020); *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).
[20] Art. V, Sec. 2, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 426.

tribunal para considerar y decidir un caso o controversia".[21]

De igual forma, es norma harta conocida que los tribunales deben ser celosos guardianes de su jurisdicción y están obligados a considerarla, aun cuando no exista un señalamiento expreso de las partes a esos fines.[22] De ahí surge que las cuestiones relativas a la jurisdicción de un tribunal gozan de un carácter privilegiado y como tal, deben atenderse y resolverse con preferencia a cualesquiera otras.[23] Así, cuando un tribunal determina que no tiene jurisdicción sobre la materia, **está obligado a desestimar el caso, pues no tiene discreción para asumir jurisdicción allí donde no la tiene, pues la falta de jurisdicción no es susceptible de ser subsanada.**[24]

En consideración con lo anterior, y a pesar de que los tribunales tienen el deber ineludible de auscultar su propia jurisdicción, los tribunales apelativos o revisores pueden examinar la jurisdicción del foro de donde procede el recurso que deben atender, pues la falta de jurisdicción sobre la materia puede plantearse en cualquier etapa del

---

[21] *Beltrán Cintrón v. Estado Libre Asociado de Puerto* Rico, supra; *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). González *v. Mayagüez Resort & Casino*, 176 DPR 848, 854 (2009).

[22] *Allied Mgmt. Group. v. Oriental Bank, 204 D.P.R. 374, 386 (2020); Constructora Estelar v. Aut. Edif. Pub.*, 183 DPR 1 (2011); *Dávila Pollock v. R.F. Mortgage*, 182 DPR 86, 97 (2011).

[23] *Autoridad Sobre Hogares v. Sagastivelza*, 71 DPR 436 (1950).

[24] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239 (2012); *Souffront v. A.A.A.*, 164 DPR 663 (2005). Véase, además Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V.

procedimiento, por cualquiera de las partes o por el tribunal a instancia propia.[25]

De esta manera, en numerosas ocasiones hemos expresado que este Tribunal tiene la responsabilidad de asegurarse de que nuestro foro apelativo intermedio descargue justicia conforme al ámbito de autoridad que se le confirió estatutariamente. En el ejercicio de esta tarea, cuando el Tribunal de Apelaciones asuma jurisdicción en un recurso sin tenerla, es nuestro deber así declararlo y desestimar el recurso.[26]

Constantemente hemos reiterado que "[u]na apelación o un recurso prematuro, al igual que uno tardío, sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre".[27] Ello se debe a que su presentación "carece de eficacia, por lo que no produce efecto jurídico alguno, ya que en el momento que fue presentado no había autoridad judicial alguna para acogerlo".[28] Un recurso de revisión tardío es uno que se presenta fuera del término disponible para ello y representa, como mencionamos, un escenario puntual que pone de manifiesto la ausencia de jurisdicción.[29]

---

[25] *Beltrán Cintrón et al. v. ELA et al.*, supra, pág. 102; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018).

[26] *S.L.G. Szendry-Ramos v. F. Castillo*, supra, pág. 883.

[27] Íd.; *Juliá et al. v. Epifanio Vidal, S.E.*, 153 DPR 357, 366 (2001). Véanse, además: *Pérez v. C.R. Jiménez, Inc.*, 148 DPR 153 (1999); *Hernández v. Marxuach Const. Co.*, 142 DPR 492 (1997).

[28] *S.L.G. Szendrey-Ramos v. F. Castillo, supra*.

[29] *JMG Investment v. ELA et al.*, 203 DPR 708, 714 (2019).

Por su parte, la Regla 32 del Reglamento del Tribunal de Apelaciones dispone el término hábil para recurrir oportunamente al Tribunal de Apelaciones cuando se interese revisar una determinación del foro primario. En lo pertinente al caso de autos, el inciso (D) de la regla establece lo siguiente:

> El recurso de certiorari para revisar cualquier otra resolución u orden […] del Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud **dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida**. Este término es de cumplimiento estricto. (Énfasis suplido).[30]

Tal como menciona esta regla, el término allí dispuesto es uno de cumplimiento estricto, de manera que los tribunales no están atados al automatismo que conlleva un requisito de carácter jurisdiccional. Por lo tanto, transcurrido el término provisto, este puede ser extendido discrecionalmente según las circunstancias, y así, proveer el remedio que estimen pertinente.[31] Sin embargo, esta extensión no se hará automáticamente y siempre estará sujeta a que la parte que actúa tardíamente haga constar las **circunstancias específicas** que ameriten reconocerse como justa causa para prorrogar un término de cumplimiento estricto.[32] Si la parte no evidencia su justificación, el

---

[30] 4 LPRA Ap. XXII-B, R.32(D).
[31] *Lugo v. Suárez*, 165 DPR 729 (2005); *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560 (2000).
[32] *JMG Investment v. ELA et al.*, supra, pág. 714 (2019); *Soto Pino v. Uno Radio Group*, 189 DPR 84, 93 (2013).

tribunal "[carecería] de discreción para prorrogar el término y, por ende, acoger el recurso ante su consideración".[33]

Cónsono con lo anterior, cuando una parte incumple con su deber de presentar a tiempo un recurso de revisión, la parte recurrida podrá solicitar, mediante moción, la desestimación del recurso por el fundamento de que el Tribunal de Apelaciones carece de jurisdicción para considerar la apelación o *certiorari*.[34] De igual forma, el Reglamento de nuestro Tribunal, concretamente en su Regla 32(b)(1), reconoce la facultad que tienen las partes para solicitar la desestimación de un recurso cuando entienda que este Tribunal carece de jurisdicción para considerar el asunto.[35] Además, el inciso (d) de la precitada regla nos confiere autoridad para desestimar a iniciativa propia cualquier recurso que no ostentemos jurisdicción para atenderlo.[36]

**B. La moción de reconsideración en el procedimiento penal**

La moción de reconsideración es uno de los remedios procesales que tiene a su disposición una parte afectada por una determinación emitida por un tribunal. A su vez, esta solicitud puede tener un efecto en la jurisdicción de un tribunal apelativo para revisar las actuaciones de un

---

[33] *Rojas v. Axtmayer Ent., Inc.*, *supra*, pág. 564.
[34] Regla 212 de Procedimiento Criminal, 34 LPRA Ap. II.
[35] 4 LPRA Ap. XXII-A R.32(b)(1).
[36] Íd.

foro inferior. A diferencia de su homónimo en el ámbito civil, nuestro cuerpo procesal penal no regula expresa y detalladamente la forma en que se debe presentar una moción de reconsideración. Lo pertinente a las mociones de reconsideración está contenido en la Regla 194 de Procedimiento Criminal,[37] la cual detalla el procedimiento para formalizar los recursos de apelación en el Tribunal de Apelaciones. Es dentro del texto de esta regla, que se atiende lo pertinente a la solicitud de reconsideración. En lo atinente, el estatuto establece lo siguiente:

> Si cualquier parte solicitare la **reconsideración** de la sentencia o del fallo condenatorio dentro del **término improrrogable de quince (15) días** desde que la sentencia fue dictada, el término para radicar el escrito de apelación o de *certiorari* quedará interrumpido y el mismo comenzará a partir de la fecha en que se archive en autos la notificación de la resolución del tribunal adjudicando la moción de reconsideración.[38]

Ahora bien, debemos puntualizar que aparte de lo anterior, nuestro esquema procesal penal vigente no cuenta con más especificaciones sobre el alcance de una solicitud de reconsideración de una sentencia dictada por el foro primario.

No obstante esta limitada regulación jurídica, como principio general del derecho, los tribunales tienen el poder inherente de reconsiderar sus determinaciones, a

---

[37] 34 LPRA Ap. II.
[38] Íd.

solicitud de parte o *motu proprio*, mientras conserven jurisdicción sobre los casos.[39] Reiteradamente hemos señalado, que el objetivo principal de una moción a estos efectos es brindar "una oportunidad a la corte que dictó la sentencia o resolución cuya reconsideración se pide, para que pueda enmendar o corregir los errores en que hubiese incurrido al dictarla".[40]

En cuanto a los efectos de una solicitud de reconsideración, en Pueblo v. Román Feliciano, 181 DPR 679, 693 (2011), reconocimos que una oportuna moción de reconsideración de una resolución u orden interlocutoria en un proceso penal interrumpe el término para acudir ante el Tribunal de Apelaciones mediante recurso de *certiorari*.

Por otra parte, y de manera ilustrativa, el *Proyecto de Reglas de Procedimiento Criminal*, preparado y revisado[41] por el Secretariado de la Conferencia Judicial y Notarial de este Tribunal, por conducto del Comité Asesor Permanente de Reglas de Procedimiento Criminal, incorpora una regla que atiende en propiedad el asunto de la reconsideración en el ámbito criminal y arroja luz sobre los efectos de la moción o solicitud de reconsideración. Nos referimos específicamente a la Regla 805, y esta, en lo pertinente, preceptúa de la forma siguiente:

> Cualquier parte podrá solicitar la **reconsideración** del fallo, de la sentencia,

---

[39] *Pueblo v. Silva Colón*, 184 DPR 759 (2012).
[40] *Mun. Rincón v. Velázquez Muñiz y Otros*, 192 DPR 989, 995 (2015); *Lagares v. E.L.A.*, 144 DPR 601, 609 (1997).
[41] Proyecto revisado en febrero 2020.

resolución final o resolución imponiendo cualquier medida de desvío presentando una moción dentro **de un término jurisdiccional de quince (15) días de emitida.** Esta moción interrumpirá los plazos dispuestos en la Regla 803 para la presentación de los recursos de apelación o certiorari. **Una moción de reconsideración de un dictamen interlocutorio o postsentencia deberá presentarse dentro del término de cumplimiento estricto de quince (15) días desde su notificación.** Los plazos para presentar los recursos de apelación o certiorari correspondientes, según sea el caso, comenzarán a transcurrir nuevamente a partir de la fecha en que se notifique la resolución del tribunal que haya adjudicado definitivamente la moción de reconsideración. (Énfasis suplido).

Como se desprende de la regla propuesta, el Comité Asesor, ——delegación asignada para renovar y actualizar el cuerpo de normas vigentes referente al procedimiento criminal—— entiende necesario reconocer y explicitar la existencia del mecanismo de reconsideración. No obstante, cabe resaltar, que tanto **las Reglas de Procedimiento Criminal vigentes y su jurisprudencia interpretativa, como el reglamento propuesto, no sugieren, en lo más mínimo, la posibilidad de permitir una segunda reconsideración sobre un mismo dictamen invariado.**

Por otro lado, resulta meritorio señalar la expresión que hiciéramos en Carattini v. Collazo Syst. Analysis, Inc., 158 DPR 345 (2003), respecto al razonamiento empleado por distintos tribunales federales con relación a las mociones de reconsideración. Allí, expresamos que múltiples cortes

de Estados Unidos[42] han determinado, precisamente, que una segunda moción de reconsideración **no interrumpe el término para apelar** cuando esta se funda en los mismos argumentos que la primera o cuando la determinación de la corte sobre la primera reconsideración no alteraba el dictamen original. Sin embargo, a pesar de que reconocimos ese raciocinio, nos limitamos a aplicarlo en cuanto a las segundas mociones para solicitar determinaciones de hecho y conclusiones de derecho porque era el señalamiento que, en aquel entonces, teníamos ante nuestra consideración.[43]

No obstante, posteriormente en <u>Colón Burgos v. Marrero Rodríguez</u>, 201 DPR 330, 341 (2018), establecimos expresamente "que el razonamiento que adoptamos en <u>Carattini v. Collazo Syst. Analysis, Inc.</u>, *supra*, en referencia a la presentación de una posterior moción de determinaciones de hecho y conclusiones de derecho adicionales, a todas luces puede ser empleado en el contexto de la moción de reconsideración". Así, resolvimos que **una segunda moción de reconsideración interrumpe el término para recurrir al foro intermedio, únicamente, cuando el**

---

[42] En este caso, el razonamiento de este Tribunal destacó la siguiente jurisprudencia: *Charles L.M. v. Northeast Indep. School Dist.*, 884 F.2d 869, 870 (5to Cir. 1989), citando a *Ellis v. Richardson*, 471 F.2d 720, 721 (5to Cir. 1973). "We have squarely held that where an appellant files a second motion to reconsider 'based upon substantially the same grounds as urged in the earlier motion,' the filing of the second motion does not interrupt the running of the time for appeal, and the appeal must be dismissed"; *Acevedo-Villalobos v. Hernández*, 22 F.3d 384, 390 (1er Cir. 1994); *Aybar v. Crispin-Reyes*, 118 F.3d 10 (1er Cir. 1997).

[43] *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 334 esc. 10 (2003).

**dictamen impugnado haya sido alterado sustancialmente como consecuencia de una primera reconsideración**. Ello es así, en vías de impedir la extensión indefinida del término para recurrir en revisión judicial mediante la presentación de subsiguientes mociones de reconsideración "**basadas en los mismos fundamentos**".[44]

De igual forma, en aras de realizar un examen análogo a lo dispuesto en el cuerpo procesal civil, estimamos necesario resaltar lo que tratadistas han expresado con relación al mecanismo de reconsideración. En lo concerniente a los efectos de la presentación de una segunda moción de reconsideración en el ámbito procesal civil, y haciendo referencia al caso de <u>Carattini v. Collazo Sys. Analysis, Inc.</u>, *supra*, el tratadista José A. Cuevas Segarra ha expresado lo siguiente:

> "La presentación de una segunda moción de reconsideración tras haberse resuelto la primera moción **no tiene el efecto de interrumpir el término para apelar**. Por excepción y por vía análoga, cuando la moción de reconsideración tiene el efecto de modificar o enmendar la sentencia original, por alterar sustancialmente el resultado del caso o por producir un cambio sustancial en la sentencia original, puede la parte afectada presentar una segunda moción de reconsideración siempre y cuando la misma vaya dirigida exclusivamente a los nuevos pronunciamientos de la sentencia enmendada, pues esta sentencia enmendada constituye una nueva

---

[44] *Colón Burgos v. Marrero Rodríguez*, 201 DPR 330, 341-342 (2018).

providencia judicial distinta y separada de la original". (Énfasis suplido).[45]

Finalmente, al examinar la Reglas de Procedimiento Criminal federales nos podemos percatar que, con relación a las mociones de reconsideración, estas no contienen una provisión específica. No obstante, en numerosas ocasiones tribunales del circuito de apelaciones federal, incluso cortes de distrito, han concluido que, en el contexto criminal, una primera moción de reconsideración es permitida y que tal procedimiento será gobernado por las reglas equivalentes en el ámbito civil.[46] Al igual que este Tribunal, estos foros federales han reconocido que una moción de reconsideración no debe emplearse como un sustituto de una revisión judicial, y mucho menos, debe utilizarse injustificadamente para dilatar procesos judiciales.[47]

A la luz de la normativa expuesta, pasemos a analizar los hechos particulares del caso de autos.

**III**

El señor Báez Figueroa comparece ante nos mediante *Petición de Certiorari* y alega que la nueva pauta constitucional establecida en <u>Ramos v. Louisiana</u>, *supra*,

---

[45] José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 1369, 2da ed., San Juan, Pubs. JTS, 2011, T. IV, pág. 1369.

[46] *United States v. Fiorelli*, 337 F.3d 282, 288 (3er Cir. 2003); *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9no Cir. 2000); *United States v. Clark*, 984 F.2d 31, 33-34 (2do Cir.1993). Véase, además: *United States v. Mendez*, 2008 WL 2561962 (C.D. Cal. June 25, 2008); *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005).

[47] *Rivera Marcucci v. Suiza Dairy*, 196 DPR 157, 166 (2016).

sobre el requisito de unanimidad de jurados para alcanzar veredictos de culpabilidad válidos, debe aplicársele retroactivamente, toda vez que los veredictos condenatorios rendidos el 15 de abril de 2011 en su contra, fueron logrados por un jurado en mayoría. En síntesis, arguye que en vista de que el derecho a obtener un veredicto unánime es un derecho fundamental, este debe ser aplicado retroactivamente, máxime, cuando ha planteado este derecho anteriormente.

Por su parte, el Procurador General sostiene como primera alternativa y en lo pertinente a la Opinión que hoy emitimos, la desestimación del recurso del peticionario, ya que el mismo es tardío y priva de jurisdicción a este Tribunal. Ampara su solicitud en que el señor Báez Figueroa presentó una segunda reconsideración ante el tribunal de instancia que no interrumpió el término para acudir en revisión en torno a la desestimación de su *Solicitud de Hábeas Corpus*. El Procurador General puntualiza que la decisión sobre la reconsideración no varió el dictamen original objeto de reconsideración, razón fundamental por la cual la segunda solicitud de reconsideración no tuvo efecto interruptor sobre el plazo requerido para recurrir en *certiorari*.

De entrada, señalamos que coincidimos con el Procurador General en que el recurso de revisión judicial presentado por el señor Báez Figueroa **fue tardío**. Veamos.

Es norma reiterada que cuando una parte cuestiona la jurisdicción de un Tribunal para atender un asunto, los foros adjudicativos tienen el deber ministerial, de examinar y evaluar rigurosamente el planteamiento jurisdiccional, pues este incide directamente sobre la capacidad para adjudicar tal controversia.[48] Ante el carácter privilegiado de estos asuntos, los tribunales deben atenderla con preferencia a cualquier otra.[49]

El señor Báez Figueroa presentó ante el Tribunal de Primera Instancia una *Petición de Habeas Corpus* en la que requirió su excarcelación, basado en los recientes postulados constitucionales pautados en Ramos v. Louisiana, *supra*. El foro de instancia desestimó este recurso, por lo que el peticionario procedió con una *Moción de Reconsideración a Hábeas Corpus y/o Solicitud de Nuevo Juicio*, en la que expresó las razones por las que el Tribunal debía reconsiderar su determinación y aplicar retroactivamente las disposiciones establecidas en la reciente jurisprudencia federal. El foro de instancia, correctamente, denegó esta solicitud e inconforme, el peticionario incoó una **segunda reconsideración**, esta vez intitulada *Solicitud de Reconsideración*, **fundada esencialmente, en los mismos argumentos que anteriormente había esbozado**. Eventualmente, esta segunda moción de

---

[48] *S.L.G. Szendry-Ramos v. F. Castillo*, supra, pág. 883.
[49] *Autoridad Sobre Hogares v. Sagastivelza*, *supra*, pág. 439.

reconsideración fue correctamente denegada y el peticionario recurrió, de esta, al Tribunal de Apelaciones.

De una lectura detenida a la primera moción de reconsideración, se puede apreciar palmariamente, que la intención del peticionario era persuadir al foro primario a que repensara su decisión de desestimar la solicitud de *hábeas corpus* basado en la normativa esbozada Ramos. De hecho, más allá de examinar la intención general de su moción, el propio peticionario, expresamente suplicó al Tribunal que "**[emitiera] una orden <u>reconsiderando</u> la desestimación sin perjuicio**",[50] por lo que no debe haber duda de que esta moción, para todos los efectos prácticos, cumplió con lo requerido en la regla 194 de Procedimiento Criminal, *supra*, en lo pertinente a la reconsideración de una determinación judicial y el término para acudir ante un foro revisor.

Ahora bien, la decisión que tomó el foro de instancia sobre esta primera reconsideración **no alteró, y mucho menos enmendó, de manera alguna,** la determinación original sobre la solicitud de excarcelación que inicialmente realizó el peticionario a través de un *habeas corpus*. Es por ello que, en ausencia de tales circunstancias, la presentación de una segunda moción de reconsideración no tuvo el efecto de interrumpir el término que tenía el señor Báez Figueroa para

---

[50] Petición de *Certiorari*, Apéndice 3, pág. 10.

revisar esa determinación.[51] Contrario a lo expresado por el criterio disidente, esa segunda moción de reconsideración, en efecto, **estuvo conectada sustancialmente** con los fundamentos detallados en la primera solicitud. De hecho, la mayoría de los argumentos expresados en la segunda moción **son un calco literal** de los mencionados por el peticionario en su primera reconsideración con tal de sustentar la misma posición que este ha pretendido desde la solicitud inicial de *habeas corpus*, esto es, la aplicación retroactiva del normativo Ramos.

Si bien nuestro ordenamiento procesal criminal reconoce la facultad que tiene una parte para presentar una solicitud de reconsideración dentro de un determinado tiempo, no es menos cierto que este carece de una disposición específica que regule, si en efecto, procede o no una segunda moción de reconsideración sobre una determinación que no varió en sustancia la decisión original. De hecho, este cuerpo procesal es completamente silente en cuanto cualquier reconsideración en segunda oportunidad. En ese sentido, tanto del cuerpo procesal criminal vigente y su jurisprudencia interpretativa, como del reglamento propuesto, no surge un solo indicador que sugiera, en lo más mínimo, la posibilidad de permitir una segunda reconsideración para que el tribunal adjudicador pase revisión sobre su determinación previa, que en efecto,

---

[51] Véase *Carattini v. Collazo*, supra.

no ha variado, independientemente sea una final o una interlocutoria.

Y es que, dentro de las varias enmiendas que ha sufrido la Regla 194 de Procedimiento Criminal, *supra*, nunca se ha incluido una directriz expresa a esos fines.[52] De igual forma, no se encuentra una disposición expresa sobre este particular en el *Proyecto de Reglas de Procedimiento Criminal*. Como mencionamos en la sección que antecede, la propuesta Regla 805 detalla cabalmente el procedimiento para presentar una moción de reconsideración, en aras de uniformar los cuerpos procesales en el ámbito civil y penal. Sin embargo, el cuerpo asignado para renovar y actualizar nuestro cuerpo de normas de procedimiento criminal nada provee para una segunda moción al respecto.

De otro lado, es norma reiterada que, en el ámbito civil, una segunda moción de reconsideración es improcedente cuando el dictamen original no sufre una alteración sustancial como consecuencia de una primera solicitud de reconsideración, de manera que el término para apelar o revisar la decisión no queda interrumpido. Al extrapolar esta reiterada doctrina al ámbito criminal

---

[52] La Regla 216 (b) de Procedimiento Criminal, derogada en su totalidad por la Ley Núm. 251 de 25 de diciembre de 1995, (Ley Núm. 251-1995) establecía que una moción de reconsideración tenía el efecto de interrumpir el término para presentar el escrito de apelación, sin embargo, no mencionaba nada respecto a una segunda reconsideración. De hecho, la Ley Núm. 251-1995 enmendó la Regla 194 de Procedimiento Criminal para establecer el procedimiento por el cual se puede formalizar un recurso apelativo en el ámbito penal y, además, prescribió las consecuencias de presentar una moción de reconsideración en los tribunales de instancia. De igual forma, nada prescribió para una segunda reconsideración.

procesal, no encontramos razón alguna por la cual debamos aplicar ese reconocido estándar de manera diferente.

En ese sentido, luego de examinar el marco jurídico pertinente al asunto jurisdiccional, estamos convencidos de que nuestro ordenamiento procesal penal no brinda cabida alguna para una segunda moción de reconsideración con efecto interruptor del término de revisión judicial, máxime cuando la determinación de una primera solicitud no alteró la determinación original, y mucho menos, cuando la segunda reconsideración está fundada en los mismos argumentos que la primera. De esta forma, ejercemos nuestra facultad interpretativa sobre los procedimientos aprobados por la Asamblea Legislativa.[53] No debemos olvidar que, después de todo, la facultad de realizar enmiendas a las reglas procesales es un poder que no debemos arrogarnos, pues, esto le corresponde a la Asamblea Legislativa en virtud de lo establecido en el Art. V, Sec. 6, de la Constitución de Puerto Rico, LPRA, Tomo 1.[54]

Como hemos señalado, el recurso que el señor Báez Figueroa presentó ante el Tribunal de Apelaciones el 27 de julio de 2020 fue tardío. El peticionario presentó una moción de reconsideración el 27 de abril de 2020, la cual fue denegada mediante notificación del 10 de junio de 2020. La acción correcta para revisar la denegatoria de la primera

---

[53] *Pueblo v. Sánchez Torres*, 102 DPR 499 (1974).
[54] Véase, *Pueblo v. Román Feliciano*, 181 DPR 679, 699 (2011), Opinión disidente del Juez Asociado señor Martínez Torres.

moción de reconsideración era acudir al Tribunal de Apelaciones, mediante el correspondiente recurso de *certiorari*, en o antes del 15 de julio de 2020 ——acción que no realizó pues presentó su petición de *certiorari* el 27 de julio de 2020, esto es doce (12) días en exceso del término para ello dispuesto—— y no utilizar un remedio post sentencia inexistente ——segunda reconsideración—— en nuestro ordenamiento procesal criminal. [55]

El Tribunal de Apelaciones, luego de reiterar la norma general de no retroactividad de nuevas pautas constitucionales a casos finales y firmes denegó expedir el auto de *certiorari* por entender que no había mediado prejuicio o parcialidad en el dictamen recurrido. En consideración con lo anterior, y a pesar de que los tribunales tienen el deber ineludible de auscultar su propia jurisdicción, es norma reconocida que los tribunales revisores podemos examinar la jurisdicción del foro de donde proviene el recurso que debemos atender, pues la falta de jurisdicción sobre la materia puede plantearse en cualquier etapa del procedimiento, por cualquiera de las partes o por el tribunal *motu proprio*.[56] Indudablemente, el foro intermedio venía obligado a denegar el recurso de *certiorari* porque en ese preciso momento no albergaba jurisdicción para

---

[55] Aunque el término original vencía el 13 de julio de 2020, en virtud de *In re: Medidas Judiciales ante situación de emergencia de salud por el Covid-19*, 2020 TSPR 44, todos los términos que vencían durante las fechas del 16 de marzo de 2020 hasta el 14 de julio de 2020, se extendieron hasta el miércoles, 15 de julio de 2020.

[56] *Vázquez v. A.R.P.E.*, 128 DPR 513, 537 (1991); *Rodríguez v. Registrador*, 75 DPR 712, 716 y 726 (1953).

poder atenderlo. Decidir lo contrario equivaldría a deshacer el profesado principio de economía procesal, justicia y rapidez, que deben tener los trámites ante nuestros foros judiciales.

Es importante destacar que la presentación oportuna de un recurso apelativo debe perfeccionarse dentro del término jurisdiccional, o de cumplimiento estricto, a tenor con las disposiciones estatutarias y los reglamentos pertinentes al trámite apelativo. Lo cierto es que el término para acudir al tribunal apelativo es de cumplimiento estricto, por lo que el plazo se podría prorrogar únicamente cuando la parte incumpliente aduzca y detalle con especificidad las causas que impidieron la tramitación oportuna del recurso. No empece a esto, el peticionario en ningún momento adujo causa alguna por la que hubiese sido merecedor de una extensión en el término para presentar su recurso. En tal sentido, reiteramos, el recurso presentado por el señor Báez Figueroa fue tardío.

**IV**

Por los fundamentos expuestos, reconocemos que el Tribunal de Apelaciones no tenía jurisdicción para atender el recurso de *certiorari*, toda vez que nuestro ordenamiento procesal penal no confiere efecto interruptor a una segunda moción de reconsideración, cuando la determinación de una primera moción a estos efectos no varió el dictamen original. En consecuencia, confirmamos la determinación del

Tribunal de Apelaciones, aunque por fundamentos distintos. Por lo tanto, se remite al Tribunal de Primera Instancia para que proceda conforme lo resuelto en esta Opinión.

Se dictará Sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sammy Báez Figueroa<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección<br><br>Recurrido | CC-2020-0354 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente sentencia, reconocemos que el Tribunal de Apelaciones no tenía jurisdicción para atender el recurso de *certiorari*, toda vez que nuestro ordenamiento procesal penal no confiere efecto interruptor a una segunda moción de reconsideración, cuando la determinación de una primera moción a estos efectos no varió el dictamen original. En consecuencia, confirmamos la determinación del Tribunal de Apelaciones, aunque por fundamentos distintos. Por lo tanto, se remite al Tribunal de Primera Instancia para que proceda conforme lo resuelto en esta Opinión.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente a la que se unió la Jueza Presidenta Oronoz Rodríguez.

Bettina Zeno González
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sammy Báez Figueroa<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección<br><br>Recurrido | CC-2020-0354 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 22 de abril de 2022.

Hoy, se abandona la sabia máxima de que "el nombre no hace la cosa" a favor de un formalismo extremista que impone que "el nombre hace la cosa". Ello es lamentable, porque como garantes de los derechos individuales debemos reconocer siempre que es la sustancia lo que determina el nombre. A mi juicio, el resultado de la Opinión Mayoritaria es producto de una implantación forzada en el ámbito criminal de una normativa civil que resulta innecesaria en este caso, en particular porque su trasfondo fáctico contradice lo establecido en el dictamen mayoritario.

Según se expondrá a continuación, un estudio exhaustivo del expediente y de los escritos presentados por el Sr. Sammy Báez Figueroa (señor Báez Figueroa) demuestra que este

presentó oportunamente dos (2) solicitudes de reconsideración inconexas entre sí: una con respecto a la denegación de su petición de habeas corpus y otra tras el rechazo de su solicitud de nuevo juicio, de la cual recurrió oportunamente al Tribunal de Apelaciones. Por consiguiente, no hay espacio en este caso para discutir, explorar y expandir la normativa relacionada con las segundas reconsideraciones en la esfera penal, **pues nunca se manifestó una segunda reconsideración sobre el mismo reclamo que impactara la capacidad de este Tribunal para atender la controversia en los méritos**.

Como agravante, la Opinión mayoritaria no solo elude identificar esta realidad, sino que también falla en reconocer que la aplicación disonante de lo pautado a este tipo de casos **tendrá el efecto nocivo de ser utilizado de forma prácticamente irrestricta para negarle a una persona privada de su libertad su derecho a que su reclamo post sentencia sea examinado en los méritos**. Por rehusarme a avalar el efecto perjudicial que tendrá esta normativa en los recursos de la comunidad confinada, disiento. A continuación, procedo a expresar las razones que sustentan mi postura, no sin antes exponer la narrativa fáctica e inédita de la controversia.

**I**

Por hechos que tuvieron lugar el 5 de mayo de 2009, el Ministerio Público presentó varias acusaciones en contra del señor Báez Figueroa. Posteriormente, se celebró un juicio

por jurado, el cual rindió un veredicto de culpabilidad por mayoría. El 15 de abril de 2011, el señor Báez Figueroa fue condenado a cumplir una pena de reclusión de doscientos once (211) años.

Ahora, en lo que nos concierne, el 21 de abril de 2020, el señor Báez Figueroa presentó ante el Tribunal de Primera Instancia una Petición de habeas corpus. En esta, argumentó que, tras lo resuelto por el Tribunal Supremo federal en Ramos v. Louisiana, 590 US __ (2020), 140 S.Ct 1390 (2020), el veredicto de jurado por mayoría que recayó en su contra fue ilegal e inconstitucional. Por consiguiente, solicitó, **únicamente**, su excarcelación inmediata.[1]

Al día siguiente, el Tribunal de Primera Instancia emitió una Orden mediante la cual declaró la solicitud no ha lugar sin perjuicio. Esto, bajo el argumento de que Ramos v. Louisiana, supra, aún no era final y firme.

Acto seguido, el señor Báez Figueroa instó una Moción de reconsideración a habeas corpus y/o solicitud de nuevo juicio. De entrada, rechazó que el tribunal tuviera que abstenerse de atender su solicitud solo porque el caso federal aún no fuera final y firme. Tras argumentar con respecto a la invalidez de un veredicto por mayoría, el señor Báez Figueroa reiteró su petición de excarcelación. Mas, **por**

---

[1] Apéndice de Petición de certiorari, págs. 1-3.

**primera vez**, solicitó que se ordenara la celebración de un nuevo juicio.[2]

Luego de que le fuera concedido un término para expresarse, el Estado presentó una Réplica a mociones relacionadas a habeas corpus y nuevo juicio. En esta, señaló que la sentencia del señor Báez Figueroa es final y firme y, además, que se emitió bajo el estado de derecho que imperaba en aquel entonces. Añadió que, hasta ese momento, nada había sido dispuesto con respecto a la retroactividad de Ramos v. Louisiana, supra.

En su Dúplica, el señor Báez Figueroa reafirmó que su condena fue ilegal por haber sido producto de un veredicto de jurado por mayoría. Sostuvo que había esbozado tal argumento por años, incluso antes de la determinación del más alto Foro federal. Así, solicitó que se corrigieran los errores cometidos durante el procedimiento criminal celebrado en su contra mediante su excarcelación y la celebración de un nuevo juicio.

Con posterioridad, a través de una Orden, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de habeas corpus y nuevo juicio. Destacó que, en Ramos v. Louisiana, supra, el propio Tribunal Supremo federal reconoció que no estaba emitiendo determinación alguna con respecto a la retroactividad de la normativa adoptada.

---

[2] Íd., págs. 5-11.

En consecuencia, el señor Báez Figueroa presentó una Solicitud de reconsideración. En esta, sostuvo que le correspondía al tribunal atender su controversia y corregir el error de validar una sentencia nula e inconstitucional. Por ello, repitió su solicitud de que se anularan los veredictos, fuese excarcelado y se ordenara un nuevo juicio. El Tribunal de Primera Instancia la declaró no ha lugar.

Inconforme, el señor Báez Figueroa acudió ante el Tribunal de Apelaciones por medio de una Petición de certiorari. Tras reiterar los argumentos expuestos previamente, solicitó que se revocara la Orden y se devolviera el asunto al Tribunal de Primera Instancia para la continuación con los procedimientos.

Así las cosas, el Tribunal de Apelaciones emitió una Resolución. En ella, resaltó que la aplicación retroactiva de una defensa de rango constitucional se extiende únicamente a los casos que no son finales y firmes. En consecuencia, por tratarse de un caso cuyo trámite apelativo había concluido, determinó que no surgían indicios de perjuicio, parcialidad o error en la determinación del Tribunal de Primera Instancia y denegó la expedición del certiorari.

Todavía en desacuerdo, el señor Báez Figueroa presentó una petición de certiorari ante este Tribunal. En esta, protestó nuevamente que el Tribunal de Primera Instancia se abstuviera de resolver la controversia planteada en la espera de que así lo hiciera el Tribunal Supremo federal. Afirmó que, como territorio de los Estados Unidos, Puerto Rico está

obligado a hacer valer el derecho constitucional federal a un veredicto de jurado unánime, pues, de lo contrario, estaría restringiendo un derecho fundamental. Por consiguiente, sostuvo que no se trataba solo de aprobar la retroactividad de la normativa dispuesta en Ramos v. Louisiana, supra, sino también de validar el reclamo a un veredicto constitucional que había esgrimido por años.

Por su parte, en su Solicitud de desestimación y alegato de la parte recurrida, el Estado argumentó, primeramente, en contra de la retroactividad de lo dispuesto en Ramos v. Louisiana, supra. Mas, en lo pertinente, arguyó que este Tribunal carecía de jurisdicción por tratarse de un recurso tardío. Fundamentó su posición en que el señor Báez Figueroa alegadamente presentó una segunda solicitud de reconsideración ante el Tribunal de Primera Instancia, la cual no está reconocida en nuestro ordenamiento y, consecuentemente, no interrumpió el término para peticionar la revisión ante el foro apelativo intermedio.

En lo que es ya una acostumbrada y marcada tendencia en la línea jurisprudencial correspondiente a asuntos de Derecho Penitenciario y Procesal Penal, la mayoría de los miembros de este Foro decidió acoger el planteamiento del Estado. En consecuencia, determinó desestimar el recurso, no sin antes extrapolar innecesariamente al ámbito criminal una normativa civil. Esto, a pesar de que la realidad fáctica del caso es incompatible con el dictamen mayoritario.

Expuestas así las incidencias procesales del caso, veamos el derecho aplicable a la controversia.

## II

## A.

Como bien reconoce la Opinión mayoritaria, la normativa imperante en la esfera penal no provee particular profundidad o complejidad al asunto de la reconsideración. Es decir, el tema no ha sido objeto de particular exploración o expansión, tanto por la vía legislativa como la judicial. Como cuestión de derecho, su mención en la Regla 194 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, se limita a establecer que una reconsideración en este ámbito debe presentarse dentro del término improrrogable de quince (15) días desde que se dictó la sentencia o fallo condenatorio.

Ahora bien, contrario a lo que determina una mayoría de este Tribunal, este caso no representaba el escenario idóneo para adentrarse en las penumbras del derecho de la reconsideración penal y, mucho menos, pretender llenar el vacío legal sobre las segundas reconsideraciones. Me explico.

**Según adelantado, el señor Báez Figueroa presentó oportunamente dos (2) solicitudes de reconsideración inconexas entre sí: una con respecto a la denegación de su petición de habeas corpus y otra tras el rechazo de su solicitud de nuevo juicio, de la cual recurrió oportunamente al Tribunal de Apelaciones.** En consecuencia, es irrelevante lo relacionado a las segundas reconsideraciones en el ámbito penal, **pues nunca se manifestó una segunda reconsideración**

**sobre el mismo reclamo**. Por consiguiente, el único Derecho aplicable aquí es el de la solicitud de nuevo juicio post sentencia.

Conforme lo establece la Regla 192.1 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, una solicitud de nuevo juicio en la etapa posterior a la sentencia puede ser presentada por cualquier persona que se halle detenida en virtud de una sentencia dictada por el Tribunal de Primera Instancia y que reclame el derecho a ser puesta en libertad porque, entre otras razones, "[l]a sentencia fue impuesta en violación a la Constitución o las leyes del Estado Libre Asociado o la Constitución y las leyes de Estados Unidos". Íd. Asimismo, la moción a estos fines puede presentarse en cualquier momento. Íd. Véase, además, Pueblo v. Rivera Montalvo, 205 DPR 352 (2020).

Nuestro ordenamiento jurídico exige que toda persona acusada de delito sea confrontada con un juicio justo e imparcial, así reforzado por las salvaguardas del debido proceso de ley. Art. II, Secs. 7 y 11, Const. ELA, LPRA, Tomo 1. "Cuando se lesionan esos derechos fundamentales durante el proceso criminal se quebrantan valores esenciales de nuestra sociedad y se atenta directamente contra la libertad individual". Pueblo v. Rodríguez, 193 DPR 987, 994 (2015).

De ahí surge el derecho a un nuevo juicio, el cual está disponible cuando una sentencia se encuentra "viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal

justo". Pueblo v. Pérez Adorno, 178 DPR 946, 965-66 (2010). Solo a través de un mecanismo de esta naturaleza se le confiere "primacía a la verdad sobre aquellas bondades que puedan resultar del principio de finalidad del procedimiento criminal". Pueblo v. Rodríguez, supra.

**En consecuencia, toda vez que, esencialmente, el segundo escrito del señor Báez Figueroa fue una primera solicitud de nuevo juicio y su tercer escrito una primera reconsideración al respecto, este Tribunal estaba facultado para atender el recurso en los méritos.** Veamos.

### B.

Si bien lo expuesto a continuación no constituye el epicentro de la ponencia mayoritaria a la cual me opongo, es necesario adentrarnos en lo relacionado a la procedencia del nuevo juicio solicitado. Ello, pues, conforme indiqué previamente, el señor Báez Figueroa presentó una moción válida de nuevo juicio por tratarse de una sentencia impuesta en violación a la Constitución federal. Por consiguiente, es imperativo reiterar mi postura con respecto a la aplicación retroactiva de Ramos v. Louisiana, supra, a todos los casos, sean finales y firmes o no.

Como se sabe, en Ramos v. Louisiana, supra, el Tribunal Supremo de los Estados Unidos resolvió que el requisito constitucional federal de un veredicto condenatorio unánime por parte de un jurado es vinculante a todos los estados y territorios. Tal determinación redefinió uno de los pilares de nuestro ordenamiento penal, pues, hasta ese momento, se

consideraban válidos los veredictos de culpabilidad emitidos por una mayoría de los miembros del jurado.[3]

A partir de entonces, se desató un debate entre los distintos componentes jurídicos y legales con respecto a la aplicación de tal normativa, en particular su impacto sobre los casos finales y firmes. Si bien el más alto Foro federal finalmente contestó tal interrogante en la negativa en Edwards v. Vannoy, 593 US ___ (2021), 141 S. Ct. 1547 (2021), conforme expuse en Pueblo v. Alers De Jesús, 206 DPR 872, 874-903 (2021) (Voto particular disidente del Juez Asociado Señor Estrella Martínez), las repercusiones de Ramos v. Louisiana, supra, debieron extenderse en Puerto Rico a todo caso en el que un jurado rindió un veredicto de culpabilidad por mayoría. Mi razonamiento descansa, principalmente, en que se trata de un watershed rule bajo el estándar de Teague v. Lane, 489 US 288 (1989). Es decir, que la normativa adoptada constituye una de las excepciones jurídicas que permite que una regla de rango constitucional penal sustantiva sea retroactiva a casos finales y firmes en virtud de su impacto tanto en la administración justa de un procedimiento criminal como en los propios cimientos del ordenamiento penal.

---

[3]Véase, Pueblo v. Casellas Toro, 197 DPR 1003 (2017), donde, a solo unos años antes de Ramos v. Louisiana, supra, este Tribunal afirmó que, toda vez que el Tribunal Supremo federal había rechazado, hasta aquel entonces, reconocer el requisito de unanimidad en los veredictos del jurado como un derecho fundamental, en conjunto con la ausencia de tal exigencia en nuestro ordenamiento, "la validez constitucional de los veredictos por mayoría de nueve o más en nuestros tribunales está firmemente establecida". Íd., pág. 1019.

A su vez, la procedencia de la retroactividad se magnifica al tomar en consideración el poder que tiene cada estado y territorio para ampliar el alcance de los derechos concedidos bajo el esquema federal. Finalmente, a la luz de la propia magnitud innegable de los derechos constitucionales en juego, me reafirmo en que el señor Báez Figueroa, así como todo aquel o aquella que se encuentra privado o privada de su libertad bajo un veredicto por mayoría, tiene derecho a su excarcelación y la celebración de un nuevo juicio regido por los parámetros que hoy sabemos que caracterizan un procedimiento constitucional, indistintamente de la etapa apelativa en la que se encuentre el fallo condenatorio. De lo contrario, se validaría una laceración monumental a los derechos constitucionales de un sector significativo de la población penal por un factor tan arbitrario como lo es el momento en tiempo en el que tomaron lugar los procedimientos criminales en su contra.

## III

En su petición ante este Tribunal, el señor Báez Figueroa reitera su derecho a ser excarcelado y confrontado con un nuevo juicio tras un fallo de culpabilidad inconstitucional emitido por una mayoría del jurado. Afirma que ha protestado la ilegalidad de su condena desde que esta le fue impuesta en el 2011 y que los foros inferiores erraron al eludir su responsabilidad de atender su reclamo y conceder el remedio que procede. **Tiene razón.**

Según se explicó, una persona privada de su libertad tiene derecho a solicitar un nuevo juicio en cualquier momento, aun después de que el fallo en su contra tenga finalidad, cuando la sentencia impuesta fuera emitida en violación a las leyes. Tras Ramos v. Louisiana, supra, es un hecho ineludible que, en nuestro ordenamiento, un veredicto de culpabilidad rendido por una mayoría de un jurado es contrario a la Constitución federal y, por ende, ilegal. Por tratarse de una ilegalidad manifiesta que surge diáfanamente del caso ante nuestra consideración, procedía, a mi juicio, conceder lo solicitado.

Sin embargo, el Estado, por conducto del Procurador General, negó que el señor Báez Figueroa tuviera derecho a lo solicitado por tratarse de una condena que, al día de hoy, es final y firme. Más importante aún, a este punto del cauce apelativo, pidió que se desestimara el reclamo por tardío. Según argumenta el Estado, el señor Báez Figueroa presentó dos (2) mociones de reconsideración tras la denegación inicial de su petición de habeas corpus, por lo que, cuando al fin pidió la revisión ante el Tribunal de Apelaciones, su recurso fue presentado en destiempo.

A pesar de que un estudio sosegado del expediente revela lo errado de tal planteamiento, una mayoría de este Tribunal acogió el argumento y lo utilizó como plataforma para extrapolar del ordenamiento civil al criminal una normativa que no se ajusta a la realidad fáctica del caso. La repercusión inmediata de tal proceder es el abandono de la

máxima de que "el nombre no hace la cosa" a favor de un formalismo extremista que está en riña con nuestro deber de reconocer la sustancia del contenido para así garantizar la protección de los derechos individuales.

Como se adelantó, el señor Báez Figueroa presentó, **exclusivamente**, una petición de habeas corpus que fue denegada sin preámbulo por el Tribunal de Primera Instancia. Este entonces instó una Moción de reconsideración a habeas corpus y/o solicitud de nuevo juicio en la que solicitó que se reexaminara lo relacionado al habeas corpus. Mas, fue allí donde, **por primera vez**, formuló su petición de un nuevo juicio y argumentó a favor de su concesión. **Entiéndase, tal reclamo y razonamiento no fueron parte de su primera solicitud, por lo que se trató de una nueva petición**. La argumentación y la súplica así lo demuestran, mas el análisis de este Tribunal se redujo al título de la moción, pasando por alto su contenido.

Tal lectura distorsionada de los hechos, guiada meramente por el título que le fue dado a una moción, desatiende la norma, sabia pero trillada, de que el nombre no hace la cosa. *Meléndez Ortiz v. Valdejully*, 120 DPR 1, 24 (1987); *Comisión Servicio Público v. Tribl. Superior*, 78 DPR 239, 246 (1955). Ello, a pesar de que, en ocasiones previas, ya este Tribunal había descartado interpretar de forma autómata un escrito intitulado como reconsideración cuando su contenido demostraba que se trató de una solicitud de revisión judicial. "Así, se puede hacer caso omiso a los títulos de

los recursos y considerarlos como corresponda. El escrito de la peticionaria no puede ser considerado como una reconsideración." Cordero Vargas v. Pérez Pérez, 198 DPR 848, 868 (2017). (Citas omitidas). Es que no puede ser de otra forma, particularmente en casos de índole penal como este en el que las garantías protectoras de la libertad están en mayor riesgo. Por consiguiente, nuestro rol exige prescindir de la adopción maquinal de las etiquetas de los escritos a favor de conferirles a su contenido el peso o mérito que corresponda en Derecho.

De hecho, el trámite de la solicitud del señor Báez Figueroa demuestra que los tribunales inferiores también interpretaron el contenido de tal escrito como una primera petición de nuevo juicio. Según surge del expediente, el Tribunal de Primera Instancia, posterior a su presentación, ordenó a que el Estado se expresara con respecto a la petición y, al denegarla eventualmente, se refirió a esta como una "solicitud de Habeas Corpus y Nuevo Juicio", no como una moción de reconsideración.[4] Fue entonces cuando el señor Báez Figueroa procedió a solicitar la reconsideración de la denegación del habeas corpus **y** el nuevo juicio.

Es decir, no fue hasta su segundo escrito que por primera vez se presentó una petición de nuevo juicio, por lo que, inequívocamente, se trató de una primera solicitud a tales fines. Consecuentemente, el tercer escrito, aquel

---

[4]Apéndice de Petición de certiorari, pág. 48.

malinterpretado como una segunda moción de reconsideración, constituyó en realidad una primera reconsideración con respecto a la solicitud de nuevo juicio. De tal subsecuente denegación es que el señor Báez Figueroa acudió, oportunamente, ante el Tribunal de Apelaciones y consistentemente afirmó su derecho **a un nuevo juicio**. Ninguna otra interpretación de estos hechos fue adelantada por las partes o los tribunales recurridos hasta que la petición arribó ante este Tribunal.

**Al denominar como primera reconsideración lo que, a todas luces, es una primera petición de nuevo juicio y, de forma similar, adoptar como segunda reconsideración lo que es claramente una primera reconsideración con respecto al nuevo juicio, se tergiversaron al extremo los hechos para justificar, no solo la desestimación del recurso, sino también la implantación de una normativa que es incoherente con la realidad fáctica del caso.**

Lo que es peor, su efecto más nefasto es el de poner aún más obstáculos al ejercicio de derechos por parte de la población confinada, en particular con lo que respecta a las solicitudes de nuevo juicio, las cuales gozan de una importancia trascendental en la consecución de la justicia y han sido objeto de limitación injustificada e infundada. La decisión que toma hoy este Tribunal impone una traba más a los trámites post sentencia de los casos criminales, pues permite una lectura restrictiva de los escritos que presenten los confinados para cuestionar la validez de sus sentencias,

los cuales, por su naturaleza y procedencia, podrían dar pie a interpretaciones reductivas y erradas del reclamo. La consecuencia de ello es, según ocurrió en este caso, la desestimación continua y desmedida de recursos de confinados cuyos reclamos, válidos o no, perecen sin la revisión cabal y sensitiva que exige nuestro ordenamiento por parte de los tribunales.

## IV

Por los fundamentos antes expresados, disiento. En consecuencia, hubiera rechazado la argumentación a favor de la desestimación fundamentada en que el recurso estaba tardío. De esta forma, al no existir obstáculo jurisdiccional alguno, hubiera revocado las determinaciones de los foros recurridos y, por ende, concedido el remedio solicitado por el señor Báez Figueroa. En vista de que una mayoría de este Tribunal recurrió a una lectura imprecisa de los hechos de este caso como vehículo para implantar una normativa inoportuna e imprecisa, disiento.

                                    Luis F. Estrella Martínez
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sammy Báez Figueroa

    Peticionario

         v.                    CC-2020-0354     *Certiorari*

Administración de Corrección

    Recurrido

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 22 de abril de 2022.

Hoy una mayoría de este Tribunal -- empleando una narrativa fáctica errada -- entra en toda una disertación sobre el tratamiento que se le debe o no dar a la presentación ante el Tribunal de Primera Instancia de una "segunda" moción de reconsideración en determinado proceso criminal; un proceso criminal donde, como veremos, dicho escrito, -- en el contexto de una solicitud de nuevo juicio --, nunca se presentó. Apoyada en lo anterior, priva al aquí peticionario, el Sr. Sammy Báez Figueroa, de su derecho a la revisión judicial de cierto dictamen emitido en su contra. De dicho proceder, respetuosamente disentimos.

Para entender el porqué de nuestro disenso resulta indispensable exponer en detalle el azaroso trámite procesal que enfrentó este caso ante el foro primario, el cual dio lugar a las controversias que hoy nos ocupan. Veamos.

I.

Por hechos que se remontan al 2009, el Ministerio Público presentó varias denuncias en contra del Sr. Sammy Báez Figueroa (en adelante, "señor Báez Figueroa").[1] Culminado el juicio en su fondo, el Jurado rindió un veredicto de culpabilidad en contra de este último, por mayoría de nueve (9) a tres (3). Ante ello, en el año 2011, el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual condenó al señor Báez Figueroa a doscientos once (211) años de prisión. Dicho dictamen advino final y firme, tras haberse agotado el correspondiente trámite apelativo.

Posteriormente, y en lo aquí pertinente, el 21 de abril de 2020, entiéndase nueve (9) años después de haberse dictado *Sentencia* en su contra, el señor Báez Figueroa presentó ante el foro primario una *Petición de Habeas Corpus* en la que se limitó a solicitar su excarcelación inmediata. Apoyó su petición en la normativa constitucional establecida en el entonces recién publicado caso de *Ramos v. Louisiana*, 590 US __, 140 S.Ct. 1390 (2020), e insistió -- tal y como lo había hecho en anteriores trámites posteriores a su sentencia -- en

---

[1] Al señor Báez Figueroa se le acusó por violaciones al Art. 249 del Código Penal de Puerto Rico de 2004, 33 LPRA ant. sec. 4877, y a los Arts. 5.07, 5.15 y 6.01 de la Ley de Armas de Puerto Rico de 2000, 25 LPRA secs. 458f, 458n y 459.

que su convicción fue ilegal toda vez que el veredicto de culpabilidad emitido en su contra no fue por unanimidad del Jurado.

Examinado el referido pedido, el Tribunal de Primera Instancia lo desestimó sin perjuicio. Razonó que, de acuerdo con la Regla 45 del Reglamento del Tribunal Supremo de los Estados Unidos de 18 de abril de 2019, la decisión pautada en *Ramos*, *supra*, aún no era final y firme.

En desacuerdo, el 27 de abril de 2020 el señor Báez Figueroa presentó ante el foro primario una *Moción de Reconsideración a Habeas Corpus y/o Solicitud de Nuevo Juicio*. En su escrito, enfatizó que la decisión de *Ramos*, *supra*, aunque reciente, fue efectiva desde la fecha en que se publicó por lo que le era aplicable. A tenor con ello, reiteró que su encarcelación era ilegal por haberse emitido un veredicto de culpabilidad en su contra por mayoría del Jurado y, por tanto, inconstitucional. En consecuencia, suplicó que "luego de los trámites de rigor [se emitiera una] orden reconsiderando la desestimación sin perjuicio, [dejando] sin efecto los veredictos rendidos [en su contra] en los casos de naturaleza grave, ordenando su inmediata excarcelación y/o [la celebración de un] nuevo juicio". Apéndice del *certiorari*, pág. 10. Así pues, el señor Báez Figueroa le solicitó al Tribunal de Primera Instancia que reconsiderara su denegatoria de excarcelación y, **por primera vez**, que ordenara la celebración de un nuevo juicio.

Enterado de lo anterior, el Ministerio Público replicó a las mociones de *habeas corpus* y de nuevo juicio presentadas por el señor Báez Figueroa. En su comparecencia, sostuvo que, en el caso de *Ramos*, *supra*, el Tribunal Supremo federal estableció que no había adjudicado el asunto de la retroactividad de su decisión y que lo allí resuelto aplicaba únicamente a casos nuevos o cuyas sentencias no hubiesen advenido finales y firmes. Consecuentemente, el Ministerio Público sostuvo que el veredicto rendido en contra del señor Báez Figueroa fue válido y cónsono con el derecho vigente en ese entonces. Oportunamente, este último duplicó.

Luego de examinar los argumentos de ambas partes, el 10 de junio de 2020 el foro primario notificó una *Orden* mediante la cual denegó las solicitudes del señor Báez Figueroa. En específico, dispuso que, tras atender la réplica a las mociones relacionadas al *habeas corpus* y al nuevo juicio, proveía *no ha lugar* a ambas. Fundamentó su determinación en que el propio Tribunal Supremo de los Estados Unidos había rechazado emitir una determinación sobre la aplicación retroactiva de la normativa establecida en *Ramos*, *supra*.

Insatisfecho el proceder del Tribunal de Primera Instancia, el 20 de junio de 2020 el señor Báez Figueroa instó una *Solicitud de Reconsideración*. En esencia, repitió las razones por las cuales su convicción era inconstitucional y solicitó que se anulara el veredicto en su contra, se ordenara su excarcelación y se celebrara un nuevo juicio.

Sin embargo, el 18 de julio de 2020 el foro primario notificó la denegatoria de dichas solicitudes. **<u>Es decir, el Tribunal de Primera Instancia rechazó reconsiderar, por segunda ocasión, la petición de *habeas corpus* y, por primera vez, la solicitud de nuevo juicio</u>**.

Ante ello, el 27 de julio de 2020 el señor Báez Figueroa acudió al Tribunal de Apelaciones mediante el recurso de *certiorari*. En resumen, argumentó que el foro primario incidió al no aplicar retroactivamente su derecho fundamental a ser hallado culpable por unanimidad y no por la mayoría del Jurado. Así, reafirmó la ilegalidad de su convicción y solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia.

Examinado el alegato de este último, el 20 de agosto de 2020 el foro apelativo intermedio denegó expedir la petición de *certiorari* en cuestión. Fundamentó su rechazo en que, como norma general, la aplicación retroactiva de nuevas defensas de rango constitucional era extensiva, únicamente, a casos cuya sentencia no fuese final y firme. Sumó a ello que, ante la ausencia de perjuicio, parcialidad o error en el dictamen recurrido, no existían circunstancias que ameritaran su intervención.

Inconforme con la denegatoria de los foros *a quo*, el 18 de septiembre de 2020 el señor Báez Figueroa recurrió ante este Foro mediante el presente recurso de *certiorari*. En síntesis, insiste en que su sentencia es nula por no existir un veredicto unánime en su contra y reclama la aplicación

retroactiva del nuevo mandato constitucional esbozado en *Ramos*, *supra*. Igualmente, reitera que los foros recurridos erraron al rechazar revocar sus sentencias condenatorias y dejar de ordenar la celebración de un nuevo juicio en su contra.

Oportunamente, la Oficina del Procurador General mediante una *Solicitud de Desestimación y Alegato de la Parte recurrida* compareció ante nos. En suma, sostiene que el recurso presentado ante el Tribunal de Apelaciones y, por consiguiente, ante esta Curia, es tardío pues, a su modo de ver, el señor Báez Figueroa instó una segunda moción de reconsideración que no tuvo el efecto de interrumpir el término para revisar la denegatoria del foro primario. En la alternativa, esgrime que el Tribunal Supremo federal en *Ramos*, *supra*, dispuso que el nuevo postulado constitucional aplicaba a casos que estaban pendientes, en apelación ordinaria o cuyas condenas no hubiesen advenido finales y firmes.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes, una mayoría de este Tribunal resuelve que procede la desestimación del caso de epígrafe por falta de jurisdicción. Para llegar a dicha conclusión, razonan que el señor Báez Figueroa presentó una "segunda" moción de reconsideración por el mismo reclamo, -- entiéndase, un nuevo juicio --, que no tuvo el efecto de interrumpir el término para acudir al foro apelativo

intermedio. Como adelantamos, de dicho proceder respetuosamente disentimos. Nos explicamos.

II.

A.

Como es sabido, la Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, regula todo lo relacionado a los procesos posteriores a una convicción. En lo pertinente, dispone que cualquier persona que esté detenida en virtud de una sentencia dictada por el Tribunal de Primera Instancia y alegue, entre otros fundamentos, que ésta le ha sido impuesta de manera inconstitucional, en cualquier momento podrá presentar una moción a tales efectos ante la sala del foro primario que le impuso la referida condena. *Íd.* Véase también, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 371 (2020); *Pueblo v. Contreras Severino*, 185 DPR 646, 659 (2012); *Pueblo v. Román Mártir*, 169 DPR 809, 823 (2007).

Si el tribunal sentenciador, ante una moción al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*, determina que ha ocurrido tal violación a los derechos constitucionales de la persona sobre la cual recayó una sentencia, podrá anular y dejar sin efecto esta última, ordenar la excarcelación correspondiente, dictar una nueva sentencia o conceder un nuevo juicio, según proceda. Véase también, *Pueblo v. Rivera Montalvo*, *supra*, pág. 372; *Pueblo v. Román Mártir*, *supra*, pág. 824. En contraste, si dicho tribunal deniega la aludida moción posterior a la sentencia, la resolución que se emita a esos fines podrá ser revisada mediante un recurso de

*certiorari* ante un foro de mayor jerarquía. *Íd*. Véase también, *U.P.R. v. Merced Rosa*, 102 DPR 512, 513 (1974).

B.

Por otro lado, y por ser en extremo pertinente para la correcta disposición de las controversias ante nuestra consideración, es menester señalar que la Regla 194 de Procedimiento Criminal, 34 LPRA Ap. II, R. 194, establece el procedimiento para formalizar los recursos de apelación en el ámbito penal. Además, la precitada regla también dispone que la parte que solicite la reconsideración de la sentencia o fallo condenatorio dentro del término de quince (15) días desde que fuera dictada, interrumpe el término para presentar el escrito de apelación ante el foro apelativo intermedio. *Íd*.

**Sobre el particular, y más en lo que nos concierne, este Tribunal aclaró que la oportuna presentación de una moción de reconsideración de una resolución u orden interlocutoria en el ámbito procesal criminal también tiene el efecto de interrumpir el término para acudir ante el Tribunal de Apelaciones mediante el recurso de *certiorari*.** *Pueblo v. Román Feliciano*, 181 DPR 679, 693 (2011). En esos escenarios, el término de treinta (30) días que tiene la parte perjudicada para recurrir ante el foro apelativo intermedio comenzará a decursar a partir de la fecha en que se archive la resolución que adjudique la moción de reconsideración. Véase, Regla 194 de Procedimiento Criminal, *supra*.

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la causa de epígrafe. Como una mayoría de este Tribunal no lo hizo de esta manera, procedemos -- desde el disenso -- a así hacerlo.

III.

Como mencionamos anteriormente, en el presente caso, el señor Báez Figueroa señaló que los foros *a quo* incidieron al denegar su petición de nuevo juicio, tras razonar que la aplicación retroactiva de nuevas defensas de rango constitucional no le es extensiva a aquellos casos cuyas sentencias fuesen finales y firmes. De otra parte, el Procurador General nos solicitó, y una mayoría de este Tribunal así lo acogió, la desestimación de la causa de epígrafe, por haberse presentado tardíamente, lo que nos priva de jurisdicción para entender en la misma. Para llegar a tal resultado, razonan que el señor Báez Figueroa presentó una "segunda" moción de reconsideración por el mismo reclamo, -- entiéndase, un nuevo juicio --, que no tuvo el efecto de interrumpir el término para acudir al foro apelativo intermedio. Nada más lejos de la verdad.

Y es que, de conformidad con la normativa antes expuesta, el señor Báez Figueroa podía -- en cualquier momento, de así entenderlo procedente -- solicitar un nuevo juicio al amparo de la Regla 192.1 de Procedimiento Criminal, *supra*. Éste así lo hizo.

Ahora bien, antes de presentar dicha solicitud, como cuestión de hecho, el señor Báez Figueroa presentó una

petición de *habeas corpus* en donde se limitó a reclamar su excarcelación. Posteriormente, y ante la negativa del foro primario, éste solicitó la reconsideración del *habeas corpus* y, **por primera vez**, peticionó que se ordenara la celebración de un nuevo juicio en su contra por entender que la sentencia que se le impuso era inconstitucional a la luz de lo dispuesto por el Tribunal Supremo federal en *Ramos*, *supra*. Como vimos, ambas solicitudes fueron rechazadas por el Tribunal de Primera Instancia el 10 de junio de 2020.

Ante ello, el 20 de junio de 2020 el señor Báez Figueroa solicitó lo que fue una segunda reconsideración de la petición del *habeas corpus* y **una primera reconsideración de su solicitud de nuevo juicio**, interrumpiendo así el término para recurrir al Tribunal de Apelaciones. La denegatoria de ambas solicitudes por parte del foro primario le fue notificada el 18 de julio de 2020.

Así las cosas, y de manera oportuna, el 27 de julio de 2020 -- entiéndase a los (9) de los treinta (30) días que provee la Regla 194 de Procedimiento Criminal, *supra*, -- el señor Báez Figueroa recurrió ante el foro apelativo intermedio mediante recurso de *certiorari*. El 20 de agosto de 2020 el Tribunal de Apelaciones denegó expedir el referido auto de *certiorari*.

Consecuentemente, y dentro de los términos que nuestro ordenamiento jurídico en materia penal procesal provee para ello, el 18 de septiembre de 2020 el señor Báez Figueroa acudió ante nos. **A todas luces, teníamos jurisdicción para**

**atender los méritos de sus reclamos**. No existía aquí esa "segunda" moción de reconsideración sobre la cual una mayoría de esta Curia hoy diserta.

IV.

Es, pues, por los fundamentos antes expuestos que respetuosamente disentimos.


                                        Ángel Colón Pérez
                                        Juez Asociado